**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rosalba SOLIVAN,
Defendant–Appellant.**

No. 90–5500.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 24, 1991.

Decided July 5, 1991.

Rehearing Denied Aug. 6, 1991.

Louis DeFalaise, U.S. Atty., Lexington, Ky., Frederick A. Stine, V, Asst. U.S. Atty., Covington, Ky., for plaintiff-appellee.

Robert Alan Rosenblatt, Miami, Fla., for defendant-appellant.

Before KEITH and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

KEITH, Circuit Judge.

Defendant-appellant, Rosalba Solivan ("defendant") appeals from her March 28, 1990, judgment and sentence resulting from the sale of cocaine. For the following reasons, we REVERSE.

## I.

### A.

Terry and Lorraine Brown (collectively "the Browns") became Drug Enforcement Administration ("DEA") informants in July 1988, subsequent to Terry Brown's arrest for the purchase of one kilogram of cocaine from Pepe (defendant's former boyfriend) and defendant on March 8, 1988.

On February 13, 1989, while in custody, the Browns began making a series of DEA controlled, tape recorded, telephone calls to defendant. The first call concerned the delivery of three to five kilograms of cocaine to northern Kentucky and the price of the cocaine. During a subsequent telephone conversation, defendant informed the Browns that the price would be $19,500 per kilogram of cocaine. The series of recorded telephone conversations, which took place over the following weeks, detailed defendant's involvement in the nar-

cotics industry, the problems she encountered locating cocaine, and how she planned to fill the Browns' order for four kilograms of cocaine.

On March 19, 1989, defendant flew to Cincinnati from Miami to complete the transaction. The Browns met her at the airport and transported her to the Holiday Inn in Covington, Kentucky, where they rented a room. Shortly thereafter, Francisco Gomez ("Gomez") arrived at the hotel. Gomez had driven the cocaine from the New York City area to Covington. Terry Brown, Gomez and defendant went outside to Gomez' vehicle, retrieved the four kilograms of cocaine, brought it back to the hotel room, and examined it. DEA agents then entered the hotel room and arrested Gomez and defendant.

### B.

On April 12, 1989, defendant and Gomez were indicted on seven counts, including conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846; attempt to distribute cocaine, in violation of 21 U.S.C. § 846; interstate travel to facilitate narcotics activity, in violation of 18 U.S.C. § 1952; and use of a telephone to facilitate narcotics activity, in violation of 21 U.S.C. § 843(b). Gomez pled guilty to all charges on September 11, 1989. Defendant pled not guilty. Her trial commenced September 12, 1989, and concluded September 19, 1989.

At trial, during closing argument, the Assistant United States Attorney ("Assistant U.S. Attorney" or the "prosecutor") made the following remarks:

[Assistant U.S. Attorney]: *What you're listening to is a wholesale distributor of narcotics, cocaine discuss her business affairs* and complain about her busy schedule, the lack of good product and the trouble she's having getting this stuff up here now. And I'd submit to you, folks, that *she's been caught now. And I'm asking you to tell her and all of the other drug dealers like her*—(defense counsel's objection and Court's response omitted)—*[t]hat we don't want that stuff in Northern Kentucky and that anybody who brings that stuff in Northern Kentucky* and ...

The Court: Don't continue the comment until I rule on it.

[Defense counsel]: Objection.

[Assistant U.S. Attorney]: Oh, okay. I'm sorry.

The Court: Ready to break off?

[Assistant U.S. Attorney]: Just that, ladies and gentlemen....

Transcript at 767–68 (emphasis added). The court did not immediately admonish the jury, but instead declared a recess. Out of the presence of the jury, the court allowed defense counsel to state his objection to the prosecutor's comment on closing. Defense counsel at that time also moved for a mistrial based on the prosecutor's highly prejudicial comments. The court sustained the objection but denied the motion for a mistrial.[1] The court stated

---

1. The trial transcript reveals that the following dialogue took place out of the presence of the jury immediately after the Assistant U.S. Attorney concluded his closing argument:

The Court: All right. You have a—state your motion and your objection.

[Defense Counsel]: Your Honor, comes now the defendant Rosalba Solivan and based on counsel's comment in closing argument with respect to her other activities and the drug business of which there's no significant—

The Court: Can't hear you.

[Defense Counsel]: —of which there's no significance or substantial evidence, as well as his last comment, and that to send a message to the other drug dealers in Northern Kentucky that's clearly an appeal to the community interest of this jury. It is extremely predudicial to make that type of comment that you

have to lock her up and send a message. It's kind of like giving a punitive damage argument in a straight negligence case, this send-a-message type argument.

It's extremely prejudicial given the nature of the publicity about Columbia, the nature of the political situation, the—the repeated references in the newspapers, in the media to the drug problem, the President's speech on drugs. A gallup poll has shown that [for] the majority of Americans, this [sic] [is] their number one concern right now, all these things in this climate in this time, that type of comment is overkill. It's prejudicial, and we respectfully move for a mistrial.

The Court: All right. Sustain the motion for a mistrial. I think it's probably going a little too far. I think it's overwhelming—the motion has two parts. I think there's a lot of

that it would admonish the jury when court resumed, which it did, stating:

> At the conclusion ... certain remarks were made in the closing argument of the prosecutor to which the Court has sustained an objection and will admonish you not to consider them. Do not consider any urgings by the prosecutor to send messages to anybody. We're not here to send messages to anybody. We're here to try this defendant's case.
>
> It's our duty to try—try this defendant's case based on the evidence in this case and the law in this case and not with concern about anybody else. The Court reiterates its instructions that if the evidence establishes beyond a reasonable doubt that the defendant is guilty of the offense as charged or any of them its your duty to convict. If the United States fails to meet that burden, it's your duty to acquit. Don't worry about anybody else or send anybody any messages. We're concerned with this one case to try [defendant] on the evidence in it.

Transcript at 768.

The jury returned a verdict of guilty on all counts. On March 28, 1990, defendant was sentenced to 151–months imprisonment. Defendant filed a timely notice of appeal on March 28, 1990.

## II.

### A.

On appeal, defendant argues that, during closing argument, the prosecutor made improper and prejudicial statements which deprived her of a fair trial. Defendant contends that the prosecutor's argument constitutes reversible error because the resulting prejudice was not cured by the district court's subsequent admonition to the jury. The prosecutor's remarks, defendant argues, were prejudicial because they improperly appealed to the community conscience and interest of the jurors in ridding society of drug dealers. The prosecutor counters that its comments, if improper, were cured by the district court's admonition.

### B.

We review the district court's denial of defendant's motion for a mistrial for abuse of discretion. *See Illinois v. Somerville,* 410 U.S. 458, 462–64, 93 S.Ct. 1066, 1069–

---

evidence of—that—in there which counsel can put on the characterization she was in the drug business, as he has spelled out. But I don't think you can—should be asking the jury to send anybody messages. It's the duty of the jury to convict if there's proof beyond a reasonable doubt and to acquit if there isn't proof beyond a reasonable doubt, and the jury will be so admonished.

However, in the light of all the evidence I think it can be cured by an admonition. I don't think a little rhetoric if cured by an admonition of the Court is going to taint the whole trial, during which counsel has been afforded—counsel for the defense has been afforded great liberality. As you know, we were inclined not to give the entrapment instruction at all. You got that.
[Defense Counsel]: I would have—
The Court: I think you've had a very fair trial and we will cure this with an admonition. He didn't get very far with it before you interrupted him.
\* \* \* \* \* \*
The Court: It's the part about sending the message that I find objectionable.
[Defense Counsel]: The part about sending the message is amplified—
The Court: It's not their duty to send messages. It's their duty to acquit—or convict if there's evidence beyond a reasonable doubt and acquit if there isn't evidence beyond a reasonable doubt. I'm going to tell them that when they get back.
[Defense Counsel]: Well, without waiving our motion, we would ask for the instruction. I don't think it's going to cure it.
The Court: I think it will cure it.
[Defense Counsel]: It's going to be etched in granite on these jurors' minds.
The Court: Going to be what?
[Defense Counsel]: Etched in granite. It's going to be like trying to unring a bell. It's been told to them. He's gotten his message across. He's gone to the community interests, the other drug problems and other drug dealers. I think it's just a grievous error, Judge. The only way it can be rectified is to declare a mistrial.
The Court: Well, you made your motion. I'll overrule the motion. I'll correct it. I think it can be corrected with an admonition. And to my observation of the jury you had a very fair trial, I think. We've been more liberal with you than with most people as far as the time we've allowed you to take and everything. I think it can be cured with an admonition. I'll do it when we get back. About ten more minutes.
Transcript at 768–71.

70, 35 L.Ed.2d 425 (1973); *United States v. Cordell*, 924 F.2d 614, 617 (6th Cir.1991) (citing *United States v. Levy*, 904 F.2d 1026, 1030 (6th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 974, 112 L.Ed.2d 1060 (1991)).

In the case before us, the question of whether the district court abused its discretion in turn depends on whether the conduct of the prosecutor constitutes reversible error. *Cf. United States v. Alloway*, 397 F.2d 105, 113 (6th Cir.1968) (no abuse of discretion shown in denying motion for a mistrial where prosecutor's argument was not found to warrant reversal). In making this determination, we consider whether there was misconduct. If there was misconduct, we must determine whether the misconduct was harmless. *See United States v. Bess*, 593 F.2d 749, 756–57 (6th Cir.1979) (determining first that the conduct complained of, the prosecutor's statement of personal belief of the defendant's guilt, constituted error and then determining that such conduct constituted reversible error).

■ Thus, this Court must determine whether defendant's right to a fair trial was prejudiced by improper prosecutorial conduct. There are instances where a "single misstep" on the part of the prosecutor may be so destructive of the right to a fair trial that reversal is mandated. *See Pierce v. United States*, 86 F.2d 949 (6th Cir. 1936). We realize that such instances may be rare, but we believe this case exemplifies a single misstep so destructive to defendant's right to a fair trial that it constitutes reversible error.

## C.

### 1.

This Circuit has many times expressed itself fully on the issue of misconduct of government counsel in the prosecution of criminal cases. Our decisions in this area have recognized the standard of conduct imposed upon the prosecution of federal crimes as enunciated in *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). *See, e.g., Bess*, 593 F.2d at

756–57. In *Berger*, the Supreme Court considered an instance of prosecutorial misconduct involving both improper cross examination of witnesses and improper argument to the jury in a prosecution for conspiracy to utter counterfeit notes. *Berger*, 295 U.S. at 79–80, 55 S.Ct. at 629–30. The Supreme Court found that the prosecutor's conduct rose to the level of prejudicial misconduct because his argument to the jury was undignified and intemperate. The argument was found to have contained improper insinuations and assertions calculated to mislead the jury. *Id.* at 85, 55 S.Ct. at 632. Because the jury will normally place great confidence in the faithful execution of the obligations of a prosecuting attorney, improper insinuations or suggestions are apt to carry more weight against a defendant than such statements by witnesses. The Supreme Court stated the following in asserting that the conduct of government prosecutors must meet a high standard:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Id.* at 88–89, 55 S.Ct. at 633.

Thus, it is the duty of the prosecutor to advance the government's cause with force and persuasiveness. However, this duty encompasses concerns beyond mere advocacy. The prosecutor has a concomitant duty not to derogate from a fair and impartial criminal proceeding. Stated in slightly different terms, the government's conduct

in prosecuting the defendant may determine whether or not a defendant is accorded his or her constitutional right to a fair trial. *Cf. Viereck v. United States*, 318 U.S. 236, 247–48, 63 S.Ct. 561, 566, 87 L.Ed. 734 (1943) (finding that the prosecutor's conduct prejudiced the defendant's right to a fair trial and was "offensive to the dignity and good order with which all proceedings in court should be conducted" and quoting language in *Berger*, 295 U.S. at 88, 55 S.Ct. at 633, which stressed that the role of the prosecutor in a criminal case is to see that justice is done); *Bess*, 593 F.2d at 755 (stating that prosecutors carry a special aura of legitimacy).

In sum, the principles set forth in *Berger* forbid the government's injection of improper or prejudicial material that deprives an accused of his or her right to a fair trial. For instance, the government prosecutor may not express to the jury his or her personal knowledge of the guilt of the accused, *Bess*, 593 F.2d at 754, or bring to the jury's attention purported facts that are not in evidence and are prejudicial, *United States v. Leon*, 534 F.2d 667, 679 (6th Cir. 1976) (citing *Berger*, 295 U.S. at 88, 55 S.Ct. at 633).

### 2.

■ Unless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not per se impermissible. *See Henderson v. United States*, 218 F.2d 14, 19–20 (6th Cir.), *cert. denied*, 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253 (1955).[2] Our determination of whether comments are calculated to incite prejudice and passion in the jury is informed by the Supreme Court opinion in *Viereck*.

Eight years after the *Berger* decision, in *Viereck*, the Supreme Court considered the propriety of a prosecutor's closing argument which appealed to the national or patriotic community interest of the jurors during World War II. The petitioner had been convicted for willfully omitting a material fact in a registration form filed by him with the Secretary of State. The Secretary of State required the registration of certain agents of foreign principals. The Secretary of State also required disclosure of the terms and conditions of the agents' contracts with foreign principals. *Viereck*, 318 U.S. at 237–38, 63 S.Ct. at 561–62.

At a time when the United States was participating in World War II, the Supreme Court found that statements by the prosecutor regarding jurors' patriotism constituted an appeal wholly irrelevant to any facts or issues in the case, the purpose and effect of which could have only been to arouse passion and prejudice. While the Supreme Court reversed on the grounds of a different error, the Court explicitly stated that it thought the prosecutor's conduct prejudiced the petitioner's right to a fair trial and that, independent of the error for which the conviction was reversed, the conduct might well have placed the judgment

---

**2.** Our holding in *Henderson* and the result reached in *Alloway* reflect a general rule followed by other circuits as well. In *United States v. Shirley*, 435 F.2d 1076 (7th Cir.1970), the Seventh Circuit stated that the prosecutor's closing remarks concerning the increasing number of cars being stolen did not overstep the bounds of fairness and propriety and could not have worked a substantial injury to the defendant in denying him a fair trial because, even though the statements were not particularly relevant and had no bearing on the guilt or innocence of the defendant, the remarks did not contain an emotional appeal to the jurors' self-interest designed to arouse their prejudice against the defendant. *Id.* at 1079.

The Eighth Circuit has also stated, in a case where the prosecutor told the jurors that they were the public's last shield and the district court instructed the jury to disregard the remark, that unless calculated to inflame, an appeal to the jury to act as the conscience of the community is not impermissible. *United States v. Lewis*, 547 F.2d 1030, 1036 (8th Cir.), *cert. denied*, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1976). Similarly, the Eleventh Circuit, in *United States v. Kopituk*, 690 F.2d 1289, 1342–43 (11th Cir.1982), *cert. denied*, 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983), stated that appeals to the jury to act as the conscience of the community, unless designed to inflame the jury, are not per se impermissible. However, the remarks complained of in *Kopituk* were found by the court to have approached the line demarcating impermissible comment calculated to incite the jury against the accused, but not to have crossed the line into the realm of impropriety and prejudice by directly suggesting that the jurors had personal stakes in the outcome of the case.

of conviction in jeopardy. The remarks found prejudicial were as follows:

> In closing, let me remind you, ladies and gentlemen, that this is war. This is war, harsh, cruel, murderous war. There are those who, right at this very moment, are plotting your death and my death; plotting our death and the death of our families because we have committed no other crime than that we do not agree with their ideas of persecution and concentration camps.
>
> This is war. It is a fight to the death. The American people are relying upon you ladies and gentlemen for their protection against this sort of crime, just as much as they are relying upon the protection of the men who man the guns in Bataan Peninsula, and everywhere else. They are relying upon you ladies and gentlemen for their protection. We are at war. You have a duty to perform here.
>
> As a representative of your Government I am calling upon every one of you to do your duty.

*Id.* at 247 n. 3, 63 S.Ct. at 566 n. 3.

■ The remarks in the instant case are analogous to the comments adjudged inflammatory and prejudicial in *Viereck.* The fairness or unfairness of comments appealing to the national or local community interests of jurors in a given instance will depend in great part on the nature of the community interest appealed to, and its relationship to, and the nature of, the wider social-political context to which it refers. The correlation between the community interest comments and the wider social-political context to a large extent controls the determination of whether an appeal is deemed impermissible because it is calculated to inflame passion and prejudice. The Supreme Court in *Viereck* framed the inquiry to incorporate both the purpose and effect of the comments. In that case, in the light of contemporaneous events, which had great impact on the emotions and perceptions of jurors, the remarks "could only have . . . arouse[d] passion and prejudice." *See id.* at 247, 63 S.Ct. at 566.

In *United States v. Barker,* 553 F.2d 1013, 1024–25 (6th Cir.1977), in reviewing a conviction for bank robbery, we considered remarks which were found to have been deliberately made. These remarks were: "[I]f you can't take this evidence and find these defendants guilty on this evidence that [sic] we might as well open all the banks and say, 'Come on and get the money, boys, because we'll never be able to convict them.'" *Id.* at 1025. We determined that it was beyond the bounds of propriety for a prosecutor to suggest that unless the defendant was convicted it would be impossible to maintain "law and order" in the jurors' community. *Id.*[3]

The D.C. Circuit has applied this principle prohibiting appeals which are inflammatory in the contemporary climate to pleas against the drug problem in the ongoing drug war. *United States v. Hawkins,* 595 F.2d 751 (D.C.Cir.1978), *cert. denied,* 441 U.S. 910, 99 S.Ct. 2005, 60 L.Ed.2d 380 (1979). The D.C. Circuit stated that prosecutors are not "at liberty to substitute emotion for evidence by equating, directly or by innuendo, a verdict of guilty to a blow against the drug problem." *Id.* at 754.

In *United States v. Barlin,* 686 F.2d 81 (2d Cir.1982), the Second Circuit found improper statements very similar to the ones alleged prejudicial in the instant case. In *Barlin,* the court found the prosecutor to

---

**3.** Similar reasoning was applied in *Brown v. United States,* 370 F.2d 242 (D.C.Cir.1966), a case involving a criminal prosecution of an African–American youth for assault based on a confrontation between the defendant and two police officers. The court found the prosecutor's community appeal improper. During closing argument, the prosecutor warned the jury that to acquit the defendant would leave the police powerless to protect themselves and citizens against assault short of resort to martial law. In condemning these remarks, and in reversing the defendant's conviction, the D.C. Circuit found that such an argument was an appeal wholly irrelevant to any facts or issues in the case. *Id.* at 246 (relying on *Viereck,* 318 U.S. at 247, 63 S.Ct. at 566, and *Berger,* 295 U.S. at 88, 55 S.Ct. at 633). Further, the court stated that the prosecutor's argument raised the spectre of martial law and therefore constituted an especially flagrant and reprehensible appeal to passion and prejudice in the context of current events (i.e., the social unrest of the late 1960s).

have improperly appealed to the jury's passion and emotion in characterizing its job as "the one occasion on which you have a duty to do something about the drug traffic in our community." *Id.* at 93. We agree with the Second Circuit's condemnation of this genre of comments designed to divert rather than focus the jury upon the evidence. *See id.*

■ We agree with the following statement by the court in *United States v. Monaghan,* 741 F.2d 1434 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1085, 105 S.Ct. 1847, 85 L.Ed.2d 146 (1985), condemning appeals to the community interest to end a societal evil:

A prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking. The evil lurking in such prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence. Jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem. The amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear.

*Id.* at 1441.

■ In the instant case, we examine closely the substance of the prosecutor's statements to determine whether they were calculated to inflame. Our determination will depend on whether the statements appeal to community interests in light of current events and the nature of the specific case. In the case before us, the effect of the prosecutor's comments was to suggest to the jury that, because of defendant's participation in the drug trade in northern Kentucky, the drug problem facing the jurors' community would continue if they did not convict her. It is error for a prosecutor to direct the jurors' desires to end a social problem toward convicting a particular defendant.

Even though this nation is in the midst of an ongoing crisis, popularly termed the "War on Drugs," this crisis does not create an excuse to impinge on the constitutional right to a fair trial. We repeat what we stated in *United States v. Radka,* 904 F.2d 357 (6th Cir.1990):

Presently, our nation is plagued with the destructive effects of the illegal importation and distribution of drugs. At this critical time, our Constitution remains a lodestar for the protections that shall endure the most pernicious affronts to our society.... The drug crisis does not license the aggrandizement of governmental power in lieu of civil liberties. Despite the devastation wrought by drug trafficking in communities nationwide, we cannot suspend the precious rights guaranteed by the Constitution in an effort to fight the "War on Drugs."

*Id.* at 361 (reversing a denial of a defendant's motion to suppress evidence obtained in a warrantless search of defendant's home because there were no exigent circumstances). Here, defendant's constitutional right to a fair trial was violated because the appeal to the community conscience in the context of the War on Drugs prejudicially impacted on her. The fear surrounding the War on Drugs undoubtedly influenced the jury by diverting its attention away from its task to weigh the evidence and submit a reasoned decision finding defendant guilty or innocent of the crimes with which she was charged. The substance of the statements made by the prosecutor in this case were designed, both in purpose and effect, to arouse passion and prejudice and to inflame the jurors' emotions regarding the War on Drugs by urging them to send a message and strike a blow to the drug problem.

This nation faces a variety of social problems with which all citizens are daily confronted. The drug problem is one of the most compelling and devastating problems faced by this nation today. This Court is acutely aware of the nature and extent of the drug problem. However, government prosecutors are not at liberty to urge jurors to convict defendants as blows to the drug problem faced by society or specifically, within their communities, or to send messages to all drug dealers. Such appeals are extremely prejudicial and harmful

to the constitutional right to a fair trial. It should be clear from the foregoing discussion that, while not causing error per se unless the statements are deemed to be calculated to incite prejudice, prosecutors should exercise extreme caution when making any statement referring to the community interests of jurors.

The government relies on *United States v. Alloway*, 397 F.2d 105 (6th Cir.1968), to provide an example of a similar instance of comments directed to the community conscience of jurors. In *Alloway* we reviewed a conviction for armed robbery of a Federal Savings & Loan Association. The defendant asserted that improper argument by the prosecutor should have resulted in a mistrial. We held that the following statements by the prosecutor did not exceed the permissible bounds of advocacy and that therefore the district court did not abuse its discretion in denying defendant's motion for a mistrial:

> You, the jurors, are called upon in this case to be the world conscience of the community. And I'm calling on this jury to speak out for the community and let the John Alloways know that this type of conduct will not be tolerated, that we're not going to tolerate [armed robbery]....

397 F.2d at 113. The district court in *Alloway* subsequently instructed the jury to base its verdict solely on the evidence and to consider the prosecutor's argument only as it corresponded with the evidence. *Id.*

The comments by the prosecutor in *Alloway* and the comments complained of in the instant case are only vaguely similar. The remarks in this case appear to us to have been deliberately injected into the proceedings to incite the jury against defendant. Given the nature of this case, involving a cocaine transaction, and the wider social context which the prosecutor sought to bring to bear on the proceedings, the national drug problem, the purpose and effect of the comments could have only been to arouse passion and prejudice. *See Viereck*, 318 U.S. at 247, 63 S.Ct. at 566. We determined that the statements made in *Alloway* were not deliberately injected into the proceedings to inflame the jury. *See* 397 F.2d at 113. Indeed, examined in the light of the nature of the case and the wider social context in which the case was prosecuted, it is clear that the government's statements in *Alloway* were devoid of the sort of inflammatory content inherent in the prosecutor's statements in this case precisely because there was no comparable specific wider context of national attention and concern present in *Alloway* pertaining to armed robbery. The comments in *Alloway* did not attempt to compare or to associate the defendant with a feared and highly publicized group, such as drug dealers, as did the prosecutor in this case. The prosecutor in *Alloway* did not go beyond a mere allusion to the general need to convict guilty people, as did the prosecutor in this case, and bring to bear upon the jury's deliberations the attendant social consequences of defendant's criminal conduct or urge the jury to convict an individual defendant in an effort to ameliorate society's woes.

Here, the prosecutor honed in on the illegal drug trade, which is the specific focus of much national attention, concern and fear. Thus, in *Alloway*, we were not presented with a context similar to the context of the case before us now. This case involves a woman charged with possession of cocaine with intent to distribute cocaine, among other charges. The wider social, political reality into which the prosecutor impermissibly sought to insert the case is the highly publicized, national and international drug trade. The prosecutor brought to bear upon the jury's decision whether to convict defendant the pervasive fear of drugs and the attendant dangers of drugs and drug addiction. The almost daily attention given by the media and politicians to the drug trade and gang violence, for example, have heightened the nation's awareness of, and hardened its attitudes towards, the drug problem. Thus, the prosecutor's appeal to the jury to convict a defendant as a blow to the drug problem or to send messages to drug dealers cannot be other than highly prejudicial given the specific context of the case in the current social-political environment.

In *Alloway*, we were presented with remarks by the prosecutor which alluded only to the general criminality of the defendant's conduct in robbing a bank and the general community need to convict guilty people. The comments at issue in *Alloway* constituted a general plea which did not even specifically refer to the crime of armed robbery. Moreover, armed robbery was not and is not the specific focus of national attention as is the drug problem. In the instant case, we find that *Alloway* is inapposite because, in this case, the prosecutor went beyond the scope of the prosecutor's statements in *Alloway*, which constituted a mere innocuous reference to the community or societal need to convict guilty people. The prosecutor in the instant case went beyond stating the obvious, and went so far as to urge the jury to send a message to the community, to defendant and "all of the drug dealers like her" by convicting defendant. The prosecutor suggested to the jury that convicting defendant would help keep its community in northern Kentucky free of the drug trade by sending the message that "we don't want that stuff in Northern Kentucky and that anybody who brings that stuff ..." presumably would be convicted just like defendant in this case. We determine that the prosecutor improperly injected the spectre of an influx of cocaine dealers into the jurors' community in an attempt to appeal to the jurors' emotions, passions and prejudices against the drug problem. *See generally United States v. Love*, 534 F.2d 87, 89 (6th Cir. 1976) (finding reversible misconduct where prosecutor intentionally and for no legitimate purpose injected into the trial the spectre of organized crime and the Mafia).

Thus, we conclude that the complained of remarks by the prosecutor in this case constitute error. The remarks were isolated to one portion of the trial, closing argument. However, this fact does not ameliorate their prejudicial impact; the remarks were misleading, inflammatory and prejudiced defendant's right to a fair trial.

### D.

#### 1.

■ Having determined that the prosecutor's remarks were prejudicial to defendant's right to a fair trial and thus constituted error, we now turn to examine whether such error was harmless.

■ Our review of a claim of prosecutorial misconduct on appeal is guided by the standards set forth in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), to determine whether constitutional error is harmless error or whether reversible error has resulted from improper evidence or improper argument to the jury. In *Chapman*, the Supreme Court held that errors at trial, even federal constitutional errors, do not require automatic reversal of a conviction if the error can be classified as harmless. It is incumbent upon the government to demonstrate that such constitutional error, resulting from the admission of highly prejudicial evidence or comment, is harmless beyond a reasonable doubt. *Id.* at 24, 87 S.Ct. at 828. If there is a reasonable possibility that the evidence or comment complained of might have contributed to the conviction, then such error cannot be harmless beyond a reasonable doubt. *See id.* at 23–24, 87 S.Ct. at 827–28 (relying on *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963)); *Coury v. Livesay*, 868 F.2d 842, 845–46 (6th Cir.1989) (applying the *Chapman* harmless error analysis to determine whether the error affected the result).

■ The result of a harmless error analysis depends on the circumstances of the particular case. *Phelps v. Duckworth*, 772 F.2d 1410, 1413 (7th Cir.) (en banc), *cert. denied*, 474 U.S. 1011, 106 S.Ct. 541, 88 L.Ed.2d 471 (1985); *United States v. Shue*, 766 F.2d 1122, 1132 (7th Cir.1985). Determining whether an error is reversible necessitates examination of the entire record. *See United States v. Hasting*, 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983). *Hasting* reiterated the Supreme Court's recognition that "given the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an

error free, perfect trial, and that the Constitution does not guarantee such a trial." *Id.* at 508–09, 103 S.Ct. at 1980.

### 2.

■ The government urges us to find that the prosecutor's comments were fair comment based upon the evidence and were cured by an admonition from the trial judge.

Prosecutorial missteps have been held harmless in light of the relative strength of the evidence or because instructions given by the trial court sufficiently diluted or eradicated any resulting prejudice. *See United States v. Hawkins*, 595 F.2d 751, 754–55 (D.C.Cir.1978), *cert. denied*, 441 U.S. 910, 99 S.Ct. 2005, 60 L.Ed.2d 380 (1979). Regardless of the strength of the case against defendant, the instructions given by the district court were insufficient and came too late to mitigate the negative and highly prejudicial impact of the remarks on the jurors' minds, especially since the remarks were among the final arguments presented to the jurors prior to their deliberations.

■ When isolated remarks are made in the course of a long trial and the jury is given an appropriate cautionary instruction designed to overcome any prejudice that may have been caused, the error may be harmless. We examine the curative effect, if any, of the cautionary instruction to the jury in the light of the degree and effect of the prejudice. However, an error may be so prejudicial that no cautionary instruction, however swiftly and forcibly given, can safely eradicate its effect. *See Pierce v. United States*, 86 F.2d 949, 952–53 (6th Cir.1936).

In *Pierce*, we articulated the method for testing prejudice where a cautionary instruction has been given to a jury because of improper argument by a prosecutor:

> The inquiry ... must always be as to whether in view of the whole record the impression conveyed to the minds of jurors by irrelevant and prejudicial matter is such that the court may fairly say that it has not been successfully eradicated by the rulings of the trial judge, his

admonition to counsel, and his instruction to the jurors to disregard it.

*Id.* at 952. Similarly, in *Ippolito v. United States*, 108 F.2d 668, 670–71 (6th Cir.1940), we stated that "appeals to the passion and prejudice of a jury," while constituting error, do not require reversal unless such error affects the substantial rights of parties. *Id.* at 670. We recognized, as we do here, that a single instance of error may be so destructive of a defendant's right to a fair trial that reversal must follow. *Id.* at 671.

In *United States v. Ashworth*, 836 F.2d 260, 267 (6th Cir.1988), we adopted the Ninth Circuit's analysis in *United States v. Flake*, 746 F.2d 535 (9th Cir.1984), *cert. denied*, 469 U.S. 1225, 105 S.Ct. 1220, 84 L.Ed.2d 360 (1985). The *Flake* court framed the question of whether a new trial is warranted as whether improprieties in counsel's argument to the jury were so gross as to probably prejudice the defendant and whether any resulting prejudice was not neutralized by the trial judge's instruction or admonition to the jury. *Id.* at 542. The court in *Flake* found that improprieties in the prosecutor's argument to the jury were improper but not gross, and in any case were followed swiftly by the court's admonition and the prosecutor's apology and personal request that the jury heed the court's instructions. *Ashworth* involved an appeal from the defendants' convictions for conspiracy and arson. The *Ashworth* court applied the *Flake* approach to determine whether prejudice resulted from improper prosecutorial comment on a fact not in evidence and whether such comment was cured by an admonition from the court. In argument to the jury, the prosecutor referred to prior statements by two co-defendants to the effect that they denied talking to each other on the night of the fire. On appeal, we concluded that the prosecutor's comment was not so gross as to probably prejudice the defendants and that any slight prejudice resulting from the improper argument was neutralized by the court's cautionary instruction to the jury that the attorneys' arguments were not evidence. *Ashworth*, 836 F.2d at 267.

In this case, we find the comments made by the prosecutor during closing argument to have been so gross as to probably prejudice defendant. We also find that the trial court's admonition to the jury did not neutralize the prejudice resulting from such comments. Therefore, we cannot conclude that there is no reasonable possibility that the comments did not contribute to defendant's conviction.

Both the timing and the firmness of the trial court's admonition are relevant in evaluating whether an admonition has been sufficient to mitigate prejudicial error. In *Bess* we found the timing of the trial judge's admonition relevant. In finding improper remarks by the prosecutor to constitute reversible error, we noted that the objectionable remarks were promptly objected to, but that the trial judge failed to give an immediate curative admonition. 593 F.2d at 757. In *Bess* we stressed that corrective measures should be taken immediately in instances of prosecutorial misconduct so as to ameliorate any resulting prejudice. *Id.* at 757 n. 10. While the trial judge in this case did admonish the jury, the admonition given to the jury took place after a twenty-minute recess which occurred immediately following the prosecutor's improper statements. As the defense counsel stated, these comments were allowed to become "etched in granite" in the jurors' minds. The admonition given by the district court in this case was given too late to eradicate the prejudice from the jurors' minds. Moreover, the misconduct which took place in the instant case "called for stern rebuke and repressive measures." *Berger v. United States*, 295 U.S. 78, 85, 55 S.Ct. 629, 632, 79 L.Ed. 1314 (1935). In cases where an admonition has been found to mitigate or remove the taint of prejudicial prosecutorial misconduct, the admonition has been swiftly given and firm. *See Phelps v. Duckworth*, 772 F.2d 1410, 1413–14 (7th Cir.) (en banc), *cert. denied*, 474 U.S. 1011, 106 S.Ct. 541, 88 L.Ed.2d 471 (1985). In *Phelps*, the jury was admonished twice to correct the prejudicial statements. *Id.* Moreover, in *Phelps*, the jury was admonished immediately. The admonition in this case was neither swiftly given nor did it sufficiently convey to the jury a sense of judicial disapproval of the remarks to dispel the harmful content and impact of the prosecutor's egregious statements. Even were the district court to have immediately and appropriately admonished the jury to disregard the remarks, we doubt seriously that any cautionary instruction could have safely eradicated the highly prejudicial effect of the prosecutor's statements in this case. The statements were deliberately injected into the proceedings to inflame the jurors' emotions and fears associated with the current drug epidemic that is reported daily in our newspapers and which threatens the very fabric of our society. *Cf. United States v. Love*, 534 F.2d 87, 89 (6th Cir.1976) (finding the trial judge's effort to neutralize prejudicial government comments ineffective and reversing the defendant's conviction where prosecutor intentionally injected into the trial the spectre of organized crime and the Mafia). The statements were so inflammatory in the context of the ongoing drug war that no charge could have sufficiently cured the prejudice.

In the instant case, we cannot say that the government has demonstrated, beyond a reasonable doubt, that the prejudicial comments did not contribute to the defendant's conviction. As we have stated previously, "[d]ue process does not require perfect trials but it mandates fair ones." *Love*, 534 F.2d at 89.

### III.

Because we find that the egregious prosecutorial misconduct which occurred in this case did not constitute harmless error, we conclude that the district court abused its discretion in denying defendant's motion for a mistrial. Accordingly, the judgment and sentence against defendant are REVERSED and this case is REMANDED for a new trial consistent with this opinion.