

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>          Respondent,<br><br>          v.<br><br>MAHAMED M. ABDI,<br><br>          Appellant. | No. 73144-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: March 7, 2016 |

APPELWICK, J. — Abdi appeals his conviction for delivery of an uncontrolled substance in lieu of a controlled substance. He argues that the trial court erred in admitting testimony about the danger of uncontrolled substances. We affirm.

## FACTS

On June 6, 2014, the Seattle Police Department performed a drug bust operation in the Belltown area of Seattle. Seattle Police Officer Wesley Collier was working undercover as part of this team.

That evening, Officer Collier came into contact with Mahamed Abdi. Officer Collier asked Abdi, " 'Can I get two for $20?' "[1] Abdi told Officer Collier to walk down the block with him, saying that he would leave the cocaine on a nearby

---

[1] By this, Officer Collier meant that he wanted to purchase two crack cocaine rocks for $20.

windowsill. Officer Collier refused, because he thought Abdi was trying to steal his money.

Abdi then opened his mouth, and Officer Collier saw a number of small white rocks inside Abdi's mouth that he believed to be crack cocaine. Officer Collier showed Abdi a $20 bill. Abdi proceeded to spit two rocks onto the ground. He warned Officer Collier not to pick them up. Officer Collier then showed Abdi the $20 bill again, and Abdi took it from his hand. At this point, Officer Collier gave his agreed upon "good buy" signal that notified the surrounding officers that the transaction was complete. Abdi then spat a third rock onto the ground.

When Officer Collier bent down to pick up the rocks, Abdi came rushing toward Officer Collier. Officer Collier executed his duress signal, which alerted the other officers that he needed help.

The arrest team moved in within seconds, placing Abdi under arrest. Officer Collier recovered the three rocks from the ground. These rocks were later tested and determined not to be cocaine or any other controlled substances.

Abdi was charged with a violation of the Uniform Controlled Substances Act, RCW 69.50.4012, for offering to sell crack cocaine and delivering an uncontrolled substance. And, he was charged with felony harassment of Officer Collier. At trial, Officer Collier testified as to the dangers posed by uncontrolled substances. The jury found Abdi guilty of the delivery of an uncontrolled substance in lieu of a controlled substance, but not guilty of felony harassment. He appeals.

2

## DISCUSSION

Abdi argues that the trial court abused its discretion by admitting Officer Collier's testimony about the danger of uncontrolled substances. He asserts that this testimony was irrelevant and prejudicial.

At trial, the State asked Officer Collier a series of questions pertaining to the risk posed by uncontrolled substances. The State first asked Officer Collier why uncontrolled substances are a risk in the community. Officer Collier began to answer, stating, "[M]y personal opinion, I --." Abdi objected to this on the basis of foundation, speculation, and relevance. The court asked the State to rephrase the question so as not to elicit Officer Collier's personal opinion. The State did so, asking Officer Collier, "[I]n your training and experience why are uncontrolled substances a risk in the community?" Abdi again objected as to foundation and hearsay. The court ruled that Officer Collier could testify to his own knowledge if it was based on his training.

The State again asked Officer Collier why uncontrolled substances are a risk to the community. Officer Collier responded, "[W]hoever's taking that substance does not know what the actual drug is. That drug can cause [th]em to do pretty unpredictable things, get them sick, kill them, and make them make irrational decisions." The State asked Officer Collier if these drug transactions have consequences. He responded, "[I]f a[n] addict is trying to get high and a drug dealer sells them bunk, which is fake drugs, that user tries to smoke it and doesn't get his fix, doesn't get his high, he can then try to seek revenge on the person who

just sold him that drug and --." Abdi objected again on the basis of speculation, and the court overruled the objection.

Officer Collier continued, stating that when a dealer sells uncontrolled substances, drug users often try to harm the dealer, and the dealer then defends himself, resulting in violence. He also stated, "[A]nd then you have the user who is using fake drugs that probably has bleach in it or some other substance that --." Abdi objected, and the court sustained the portion regarding bleach and struck it from the record. Officer Collier rephrased, stating that sometimes imitation drugs have unknown elements in them that can cause significant damage. The State concluded this topic by asking Officer Collier if his team treats uncontrolled substances the same way they treat controlled substances. Officer Collier confirmed that they do.

Abdi asserts that Officer Collier's entire testimony about the risk posed by uncontrolled substances was not relevant to the issues before the jury. He argues that these statements did not make it more likely that he delivered uncontrolled substances to Officer Collier.

Evidence is relevant if it has any tendency to make the existence of a fact of consequence to the action more or less probable. ER 401. Relevant evidence is generally admissible. ER 402. The trial court has considerable discretion to consider the relevancy of evidence. State v. Barry, 184 Wn. App. 790, 801, 339 P.3d 200 (2014). As such, this court reviews a trial court's decision on relevancy for an abuse of discretion. Id. at 801-02. An abuse of discretion occurs only when the trial court's decision is manifestly unreasonable, exercised on untenable

4

grounds, or for untenable reasons. State v. Rice, 48 Wn. App. 7, 11, 737 P.2d 726 (1987).

Abdi argues that the evidence elicited here is akin to that in State v. Suarez-Bravo, 72 Wn. App. 359, 864 P.2d 426 (1994). Suarez-Bravo was charged with unlawful possession of a controlled substance with intent to deliver, based on a police drug bust operation at a local pharmacy. Id. at 360-61. At trial, the court allowed the State to question Suarez-Bravo about the high rate of crime in his apartment building. Id. at 362. The Court of Appeals ruled that the trial court abused its discretion by admitting this evidence, because the alleged crime at issue took place far away from Suarez-Bravo's apartment. Id. at 364-65. Thus, evidence about Suarez-Bravo's apartment resembled profile evidence. Id. at 365. This evidence suggested that the defendant was more likely to have committed the crime charged simply because he lived in a high crime area. Id.

Suarez-Bravo is not an apt comparison to this case. The evidence here was not irrelevant profile information. It was relevant to the delivery charge. It provided information about the dangers of delivering uncontrolled substances in lieu of controlled substances. It explained why the State would be concerned about the fact of such a delivery.

Generally, the State may present evidence about a police officer's experience, as well as the nature of and reasons for the police operation that resulted in a defendant's arrest. See State v. Perez-Arellano, 60 Wn. App. 781, 784, 807 P.2d 898 (1991). In Perez-Arellano, the trial court permitted multiple police officers to testify that the area in which the defendant was arrested was

5

known as a high crime neighborhood. Id. at 783. On appeal, the court held that this evidence was relevant and helpful to the jury, because it explained why the police were observing that area. Id. at 784-85. The average juror might speculate as to whether police drug operations are legal or appropriate, and evidence explaining why the police were in the area would explain the circumstances of the arrest. Id. at 785.

This case presents a different factual scenario than Perez-Arellano, but similar principles apply. Like the officers in that case, Officer Collier testified about background information explaining the reason for undercover operations like this one. He described the effects of narcotics trafficking in the downtown Seattle area and the dangers associated with drug dealing in this area. And, he detailed how uncontrolled substances contribute to the dangers involved in narcotics trafficking. Officer Collier further explained that uncontrolled substances pose certain risks to the community, basing this observation on his training and his prior experience with drug operations in the area. Thus, the statements that Abdi challenges can be understood as elaborating on the reasons for this investigation.

And, like in Perez-Arellano, Officer Collier provided information on a topic about which the jury might have otherwise been left to speculate. Officer Collier's training and experience led him to conclude that uncontrolled substances should be investigated in the same way as controlled substances, because of the dangers they pose. Although Abdi did not contend that this investigation was improper, the average juror might not understand why delivery of an uncontrolled substance should be investigated or charged. See Perez-Arellano, 60 Wn. App. at 785

(noting that the jury might speculate about whether the officers' investigation was legal, even though the defendant did not challenge it); State v. Salazar, 59 Wn. App. 202, 211, 796 P.2d 773 (1990) (reasoning that the jury needed to know if the police had a lawful basis to search the defendant's car in order to acquit intelligently). Therefore, it was not unreasonable for the trial court to conclude that this evidence was relevant. The trial court did not abuse its discretion in admitting this testimony.

Moreover, even if the trial court did abuse its discretion in admitting this testimony, Abdi must also show that the error was prejudicial. See State v. Bourgeois, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997) (noting that an error in admitting evidence does not require reversal unless it resulted in prejudice to the defendant). An error is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially different had the error not occurred. State v. Everybodytalksabout, 145 Wn.2d 456, 469, 39 P.3d 294 (2002). But, if the error is of minor significance compared to the overall evidence as a whole, the error is harmless. Id.

Abdi argues that this testimony was prejudicial, because it was designed to inflame the passion of the jury. In doing so, Abdi compares this case to United States v. Solivan, 937 F.2d 1146 (6th Cir. 1991). There, the prosecutor made statements in closing argument that encouraged the jury to send a message to the defendant and other drug dealers in the state that this behavior would not be tolerated. Id. at 1148. The Sixth Circuit held that the prosecutor erred by encouraging the jury to end the drug problem by convicting a particular defendant.

7

Id. at 1153. The context of the statements showed that they were designed to inflame the jurors' emotions regarding the war on drugs. Id. These statements likely prejudiced the defendant. Id. at 1157.

Solivan is not persuasive authority here. First, that case dealt with a prosecutor's statements in closing argument, rather than witness testimony. Thus, the issue was whether the prosecutor committed misconduct, not whether improperly admitted evidence prejudiced the defendant. Id. at 1150. Second, those statements appealed directly to the jury's passions by transforming the defendant into just one of the many drug dealers who must be stopped and urging the jury to decide the case as the community conscience. Id. at 1148, 1153. Here, Officer Collier suggested that only uncontrolled substances are a risk to the community. He did not call on the jury to resolve that problem by convicting Abdi or explicitly connect this risk to Abdi.

And, Officer Collier's testimony about the dangers of uncontrolled substances is of minor significance compared to the rest of the evidence. To convict Abdi, the State had to prove that he knowingly offered, arranged, or negotiated for the delivery, sale, distribution, or dispensing of a controlled substance and that he delivered an uncontrolled substance in lieu of the controlled substance. Officer Collier testified that he asked Abdi to sell him cocaine for $20. Abdi was immediately receptive to this, instructing Officer Collier to walk down the street to give him the money. Officer Collier explained that Abdi had handful of small rocks in his mouth and then spat three rocks onto the ground. To Officer Collier, these rocks looked to be cocaine. Officer Collier gave Abdi a $20 bill in

exchange for the rocks. Abdi accepted the money. Once this exchange was completed, Officer Collier gave his "good buy" gesture, signaling that a successful drug transaction had occurred.

Officer Terry Bailey, one of the trailing officers, testified that he saw Abdi spit something out of his mouth and Officer Collier hand something to Abdi. And, the arresting officers found a $20 bill on the ground near Abdi's feet. The officers checked this bill against the prerecorded buy money sheet, and its serial number matched the $20 bill that was issued to Officer Collier. Officer Collier collected the rocks that Abdi spat out of his mouth. Later forensic testing revealed that these rocks were not controlled substances. Thus, the overwhelming evidence showed that Abdi negotiated to sell Officer Collier cocaine and delivered an uncontrolled substance in place of cocaine. Any error in admitting Officer Collier's testimony regarding the danger of uncontrolled substances was harmless.

We affirm.

WE CONCUR: