NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0499n.06

Case No. 23-5378

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Dec 06, 2024<br>KELLY L. STEPHENS, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| | ) | |
| FRANK TRAMMELL, JR., | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: SILER, CLAY, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** A jury found Frank Trammell, Jr. guilty of several federal drug and firearms crimes. Trammell believes his conviction was tainted by the fact that the prosecutor improperly implored the jury to convict Trammell not solely due to his guilt, but also as a means to protect the community. Trammell failed to make that argument in district court, however, meaning we apply plain error review. And as any error in the trial proceedings did not rise to the level of altering the verdict, we affirm.

**I.**

Following an investigation, officers learned that Frank Trammell Jr. was selling heroin mixed with fentanyl. Trammell, investigators discovered, did not operate alone. His girlfriend, Destiny Rhodes, helped facilitate various deals. So did Khalid Raheem.

Officers arrested Trammell and Rhodes at the apartment where they lived. A search of the residence uncovered fentanyl and cash as well as a loaded pistol lying on the box spring in the

master bedroom. Rhodes had purchased the pistol several months earlier for Trammell, and Trammell later posed on Instagram with the weapon, boasting about how he acquired it.

A grand jury indicted Trammell, Raheem, and Rhodes on numerous charges. For Trammell, they included conspiring, distributing, and possessing with intent to distribute heroin and fentanyl; possessing a firearm to further his drug crimes; and possessing a gun as a felon. He opted to proceed to trial. There, a host of witnesses testified for the government: investigators (including experts who explained how drug traffickers operate), informants, and several of Trammell's former customers. One customer was Megan Lee. Previously, Lee had told the FBI that she often saw Trammell with guns during drug buys. But on the stand, Lee became less certain. She stated that she was "scared to be" in court and did not want to testify. Presented with recordings of phone calls of drug buys in which she participated, Lee became evasive, refusing to "say for certain" that Trammell's voice was on the recordings. She likewise denied that she told the FBI that she had seen Trammell carrying a firearm during drug deals. The government later called an FBI agent to impeach Lee's testimony. Another agent testified that Lee was extremely nervous to testify due to a fear for her safety.

At the close of trial, the jury convicted Trammell on all counts. The district court sentenced Trammell to 387 months' imprisonment. This appeal followed.

## II.

Trammell contends that the government violated his due process rights by implying to jurors that, in rendering their verdict, they needed to protect the community from the "violent dangers" associated with drug trafficking. Appealing to the jury to "act as the community conscience[,]" we have recognized, risks inciting "the passion and prejudices of the jurors," leading them to convict a defendant for reasons "wholly irrelevant to his own guilt or innocence."

2

*See United States v. Solivan*, 937 F.2d 1146, 1151, 1153 (6th Cir. 1991) (citations omitted). Yet as settled as this principle might be, Trammell never raised it in district court. So we review for plain error. *See United States v. Hall*, 979 F.3d 1107, 1119 (6th Cir. 2020). In this context, that means Trammell must show that the prosecution patently deviated from established legal rules in a manner that was "so prejudicial as to affect the outcome of the district court proceedings." *United States v. Wright*, 343 F.3d 849, 861 (6th Cir. 2003) (citation omitted).

The transcripts Trammell highlights reflect no impropriety, let alone conduct so flagrant as to prejudice the verdict. Trammell cites no instances of the prosecutor explicitly encouraging the jury to convict Trammell to protect the community. Rather, his evidence is far more pedestrian. For example, Trammell notes that the prosecution relied on expert testimony to explain the general modus operandi of drug trafficking crimes and the investigative techniques used in trafficking investigations. But such testimony is "standard fare" in these types of prosecutions, as it helps contextualize matters that simply are not within the experience of the average juror. *See United States v. Flintroy*, No. 22-5115, 2022 WL 17959443, at *3, 5 (6th Cir. Dec. 27, 2022); *United States v. Jaffal*, 79 F.4th 582, 603 (6th Cir. 2023). True, the prosecutor asked one expert witness if he had "seen any results in the community" from drug usage. But only the most jaundiced view of this and other facially benign comments could equate the testimony to a plea for community protection. Even then, when presented with "two plausible interpretations" of a prosecutor's comments, we give the government the benefit of the doubt rather than "adopt[ing] the [interpretation] which casts doubt upon the prosecutor's intentions." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). And in any event, we require far more serious misconduct to raise community protection concerns. *See Flintroy*, 2022 WL 17959443, at *3–5 (rejecting identical community protection argument based on expert testimony on drug trafficking); *see also United*

*States v. Lawrence*, 735 F.3d 385, 433 (6th Cir. 2013) (recognizing community protection concerns arise where a prosecutor's comments "expressly link the jury's verdict . . . to the need to address [a] particular social problem," were "calculated to mislead or inflame the passions of the jurors[,]" or consisted of improper, intemperate, or undignified insinuations).

Little else remains of Trammell's argument. He highlights the prosecutor's remark during opening argument that several testifying witnesses suffered from drug addiction. And he says comments like the prosecutor's suggestion that Trammell's customers were co-conspirators coupled with references to Trammell's "organization" tended to inflate the nature of Trammell's drug dealing. We doubt that these relatively innocuous statements were improper, let alone so improper as to amount to plain error. Either way, they undeniably were not flagrant enough to have affected Trammell's substantial rights—that is, to alter the outcome of the trial. *Wright*, 343 F.3d at 861; *United States v. Carson*, 560 F.3d 566, 575–76 (6th Cir. 2009) (assessing the substantial rights issue by considering the prejudicial nature of the comments, how extensive they were, whether the comments were deliberately made, and the nature of the evidence against the defendant).

The evidence of Trammell's guilt was overwhelming. Recall the nature of Trammell's prosecution. Most charges concerned drug trafficking. Yet Trammell readily admitted to the jury that he was an active drug dealer. The remaining charges dealt with gun possession, whether under 18 U.S.C. § 922(g) for possessing a firearm as a felon, or under 18 U.S.C. § 924(c) for possessing a firearm to further drug trafficking. And on those fronts, the evidence was vast. Officers found a loaded firearm lying on Trammell's bed, near his supply of fentanyl and cash. The weapon was procured for Trammell through an illegal straw purchase, which Trammell bragged about on social media while posing with the gun. To boot, the government presented evidence, albeit through

4

impeaching one of its own witnesses, that Trammell carried a gun while dealing drugs. Collectively, this evidence amply supported the § 922(g) convictions, *see United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005), as well as the § 924(c) conviction, *see United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001) (reciting relevant factors to demonstrating possession in furtherance of a drug crime, including that the firearm was strategically located for quick and easy use, loaded, or illegally possessed). In view of this weighty backdrop of Trammell's guilt, the prosecutor's fleeting comments during trial—none of which had anything to do with the lone topic of dispute at trial (gun possession)—leave hardly a mark. *See Carson*, 560 F.3d at 576.

Trammell sees things differently. He first downplays the nature of the evidence supporting the § 924(c) conviction. To Trammell's mind, that conviction hinged on Lee, who, while on the witness stand, denied seeing Trammell with a gun when he sold her drugs. But plenty of circumstantial evidence supported the § 924(c) conviction, including the fact that Trammell, an admitted drug trafficker, illegally obtained a firearm and slept with the loaded gun, all suggesting that he utilized the firearm while trafficking drugs. *See Mackey*, 265 F.3d at 462. As to Lee, her testimony contradicted her earlier statements to law enforcement. That fact gave the jury ample reason to disbelieve Lee, and further entitled the jury to "consider whatever it concluded to be perjured testimony as affirmative evidence of guilt[.]" *Wright v. West*, 505 U.S. 277, 296 (1992) (plurality opinion). In any event, debate over the relative strength of the evidence supporting the § 924(c) conviction matters little when the statements Trammell challenges were not so flagrant as to alter the jury's view of that evidence. *Hall*, 979 F.3d at 1119 (recognizing that an unpreserved challenge to a prosecutor's remarks at trial can succeed only where the underlying statements were flagrantly improper).

5

Next, Trammell emphasizes the fact that jurors reported concerns for their personal safety to the district court. As Trammell see things, those fears were instigated by the government instilling "fear of violence from 'drug organizations[,]'" actions that purportedly "terrorized" the jury. In reality, the jurors' concerns were tied to conduct by the family of Trammell's codefendant, Raheem, first by the family staring at jurors in the courthouse parking lot, and then when jurors saw Raheem and members of his family in the courthouse café. Nothing in the record suggests the prosecutors were to blame on this front.

Lastly, Trammell invokes two cases in which we granted a new trial due to improper prosecutorial comments during a trial, *United States v. Solivan*, 937 F.2d 1146 (6th Cir. 1991), and *United States v. Acosta*, 924 F.3d 288 (6th Cir. 2019). If the comments in *Solivan* and *Acosta* warranted a new trial, Trammel says, so too do those here. Yet those cases are unlike this one. In *Solivan*, for instance, the prosecutor implored the jury to take on the mantle of community protection to "incite the passions and prejudices of the jurors[.]" *Solivan*, 937 F.2d at 1151. "I'm asking you to tell [the defendant] and all of the other drug dealers like her," the prosecutor urged, "that we don't want that stuff in Northern Kentucky . . . ." *Id.* at 1148 (internal parenthesis omitted). And that comment was joined by repeated references to the "War on Drugs." *Id.* at 1153–57. Likewise, in *Acosta*, the prosecution engaged in a bevy of improper acts, including bolstering witnesses' testimony, calling defense witnesses liars, and even ridiculing at length the defendant's religious practices. *Acosta*, 924 F.3d at 299–308. Nothing here comes close to the egregious, intentional misconduct highlighted in *Solivan* and *Acosta*. In the end, we see no plain error that merits reversal.

\* \* \* \* \*

We affirm the judgment of the district court.