**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0278n.06
Filed: April 10, 2009

**No. 07-2275**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| BRENT SMITH, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| KURT JONES, Warden, | ) | |
| | ) | |
| Respondent-Appellant. | ) | |

Before: BOGGS, Chief Judge; COLE and COOK, Circuit Judges.

COOK, Circuit Judge. Brent Smith, convicted in Michigan on three counts of criminal sexual conduct, seeks a writ of habeas corpus under 28 U.S.C. § 2254. The district court granted Smith's petition and we reverse and remand.

I. Background

The Michigan Court of Appeals set forth the pertinent facts:

Defendant was a police officer with the City of Berkley from June 1997 until approximately 2001. The instant charges arose from events in the early morning hours of December 23, 2000, when defendant, who worked the midnight shift, was on duty and patrolling. The complainant, 19 year-old Shannon Sargent, testified that at around 1:30 a.m. that morning, defendant approached the vehicle in which she and her boyfriend were "making out," which was parked behind a bar in Berkley. Sargent

showed defendant a driver's license that was not her own, belonging to a woman who was of legal drinking age. Sargent testified that defendant asked her to step out of the car and get in the police car, asked if he could search her and did so, and later asked if he could do a second search while she was seated in the back seat of the patrol car, during which he felt her breast, inner thighs, vaginal area, and buttocks, while his hand was underneath her clothes. She testified she was crying and hysterical. Her boyfriend at the time, Peter Marinelli, corroborated that testimony, and said she had told him that defendant had put his finger inside her. Defendant drove Marinelli and Sargent to the local Denny's and dropped them off. The manager of Denny's testified that he saw Marinelli and Sargent and that Sargent was crying and upset. Sargent's mother and Sargent testified to the adverse effects and mental anguish the incident caused Sargent, including her seeking therapy, her subsequent inability to drive more than short distances and her fear of police officers.

*People v. Smith*, No. 238005, 2003 Mich. App. LEXIS 2524, at \*1–2 (Ct. App. Oct. 7, 2003).

At trial, the Michigan court allowed the prosecution to present similar-acts evidence through the statements of witnesses Kristen Oliver and Corrine Steinbrenner, both of whom testified that Smith inappropriately touched intimate areas of their bodies during searches following traffic stops in 1998. Although Sargent expressed uncertainty at trial as to whether digital penetration occurred, the court admitted her statement to Marinelli that Smith "put his finger inside her" as an excited utterance. The jury convicted Smith of three counts of second-degree criminal sexual conduct under Michigan law, and the Michigan Court of Appeals affirmed. The Michigan Supreme Court denied Smith leave to appeal, and in July 2005, Smith filed this habeas petition.[1]

---

[1]It is unclear from the record whether Smith exhausted his post-conviction remedies, but "[w]e need not delve into the morass of procedural bar . . . because Petitioner's claim fails on the merits even *assuming* he properly exhausted available state court remedies." *Cyars v. Hofbauer*, 383 F.3d 485, 486 n.1 (6th Cir. 2004).

## II. Standard of Review

We review the district court's decision to grant Smith's habeas petition de novo. *Ege v. Yukins*, 485 F.3d 364, 371 (6th Cir. 2007). Clear-error review governs our review of the district court's factual findings; de-novo review applies where the findings arose from state-court documents. *Id*.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court shall not grant a writ of habeas corpus:

> [W]ith respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). But this circuit holds that "[w]here . . . the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply. Instead, this court reviews questions of law . . . de novo." *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) (citations omitted); *see also Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006).

### III. Analysis

In granting the petition, the district court agreed with Smith's arguments on two claims: prosecutorial misconduct and ineffective assistance of counsel. We analyze each in turn.

### A. Prosecutorial-Misconduct Claim and Procedural Default

The warden argues that because Smith did not object to the prosecutor's conduct at trial, procedural default applies and the district court erred in reaching the merits of Smith's prosecutorial-misconduct claim. We agree.

Procedural default precludes a federal court from granting a writ of habeas corpus if: (1) "there is a state procedural rule that is applicable to the petitioner's claim and . . . the petitioner failed to comply with the rule," (2) the state court "actually enforced the state procedural sanction," and (3) "the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." *Scott v. Mitchell*, 209 F.3d 854, 863–64 (6th Cir. 2000) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). Only the second prong of the *Maupin* test is at issue here: whether the Michigan Court of Appeals enforced the procedural sanction.

The district court concluded that the state appeals court failed to enforce the procedural sanction by addressing Smith's claim on the merits. We read the appellate court's opinion differently. The state appellate court expressly concluded that Smith did not preserve his

prosecutorial-misconduct claim and reviewed the defaulted claim for plain error, discussing plain-error factors, including petitioner's "substantial rights" and "miscarriage of justice." *See Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) ("Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits."); *Paprocki v. Foltz*, 869 F.2d 281, 284–85 (6th Cir. 1989); *People v. Rodriguez*, 650 N.W.2d 96, 110 (Mich. Ct. App. 2002). Procedural default thus bars Smith's claim.

Smith may hurdle this procedural bar, however, by demonstrating "cause for the procedural default and actual prejudice as a result of the alleged violation of federal law, or demonstrating that failure to consider the claims will result in a fundamental miscarriage of justice." *Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007) (internal quotation marks and editorial marks omitted). Focusing his efforts on showing cause for the default, Smith asserts that ineffective assistance of counsel qualifies as "cause" in his case. *See Washington v. Hofbauer*, 228 F.3d 689, 698 (6th Cir. 2000) ("[I]neffective assistance of counsel can provide the necessary 'cause' for the procedural default"). A party must prove that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The second prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. Our strong presumption is that counsel "rendered adequate assistance." *Id*. at 690.

Smith argues that his counsel failed to object to statements representing unconstitutional prosecutorial misconduct. In order to show prejudice under *Strickland*, he must "establish that but for the alleged error of his trial counsel in not objecting . . . assuming that the prosecutor committed misconduct . . . there is a reasonable probability that the result of the proceeding would have been different." *Hinkle*, 271 F.3d at 245. We conclude that he cannot make that showing.

The challenged statements fall into five categories. First, Smith targets the similar-acts evidence that the prosecutor purportedly used to show Smith's propensity to commit the alleged criminal sexual act. The prosecutor stated that "[Smith had] done it before—He started off with Kristen [Oliver]," and argued that, "after [complaints from] three girls," the police department probably wished they had done "something more." But the judge's instructions about this similar-acts evidence prevented it from affecting Smith's substantial rights:

> You may only think about it [sic] whether this evidence tends to show the following . . . the defendant used a plan, system, or characteristic scheme that he has used before or since. You must not consider this evidence for any other purpose. For example, you must not decide that it shows that the defendant is a bad person or that he's likely to commit crimes.

*See Roe v. Baker*, 316 F.3d 557, 566 (6th Cir. 2002) (concluding, on plain-error review, that "appropriate instructions . . . cured any misperception that the jury might have received from the prosecutor's arguments."). Moreover, the prosecutor prefaced her "done it before" comment by reminding the jury of the judge's instruction. *See Byrd v. Collins*, 209 F.3d 486, 537 (6th Cir. 2000)

(concluding that improper remarks "did not mislead the jury at all" where "the prosecutor told the jury during his closing argument that his argument was not evidence.").

Second, Smith alleges that the prosecutor personally attacked defense counsel by accusing him of making Sargent cry. That alleged attack, however, bears no relation to Smith's guilt or innocence, and Smith offers no argument why, had his counsel objected, "the result of the proceeding would have been different." *Hinkle*, 271 F.3d at 245. Our independent review of the record convinces us that no reasonable likelihood exists that an objection would have changed the outcome of the proceedings.

Third, Smith presses that the prosecutor improperly injected her own opinion into the proceedings. But read in context, *see United States v. Young*, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context . . . ."), the comments Smith targets came in response to defense counsel's closing arguments, *see United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996) (finding prejudicial effect minimized where defense counsel's argument invited the improper statements of prosecutor's personal opinion); *see also Byrd*, 209 F.3d at 535 ("Case law permits comments that are made in response to the argument and strategy of defense counsel." (internal quotation marks omitted)). When the prosecutor opined that "we would believe" Sargent if Sargent testified that penetration occurred, she did so only in response to defense counsel's insinuation that Sargent's alleged memory loss undermined her credibility. Similarly, the

prosecutor's declaration that she was not "going after a person who's not guilty" countered defense counsel's closing remark that given the option, he would ask the jury to find Smith factually innocent rather than merely not guilty. Viewed in the context of the prosecutor's entire closing argument, the "going after" statement came as an attempt to distinguish the State's case from a witch hunt. In fact, the prosecutor immediately followed the statement with a reminder that substantial evidence supported the State's case ("This is about the People of the State of Michigan versus the defendant. That's it. There was a thorough investigation . . . ."). Prosecutorial vouching rarely warrants a new trial. *Compare Byrd*, 209 F.3d at 537 (noting that the court has never granted habeas relief on the basis of improper vouching), *with Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005) (finding improper injections of prosecutor's personal beliefs, among other instances of misconduct, grounds for habeas relief).

Fourth, Smith contends that the prosecutor argued evidence not of record by asking "How about it's common in sexual assault victims to repress the most significant thing that happened here, the worst thing?" Once again, this comment responded to defense counsel's attack on Sargent's credibility, when he argued that her claim to have forgotten whether penetration occurred "is going to be one for the psychological books." Plus, because this came only as a possible explanation for Sargent's memory loss, the jury would be unlikely to view it as factual rather than speculative. *See Byrd*, 209 F.3d at 536 (finding that where the prosecutor's comments seem speculative, jurors "would not be confused into believing that these comments were factual evidence.").

Finally, Smith points to the prosecutor's declaration in rebuttal that returning a not-guilty verdict would be akin to saying "I'd be okay with having my daughter stopped by [Smith] at three in the morning." Although this comment appealed to jurors' emotions, we find it less likely to prejudice or mislead the jury than those statements in the cases cited by the district court. *See Bates*, 402 F.3d at 642 ("If you . . . choose not to execute the defendant, you have passively issued a warrant of execution for someone else."); *Gall v. Parker*, 231 F.3d 265, 315 (6th Cir. 2000) ("Now folks are we going to turn [defendant] loose on society by reason of insanity[?]").

Moreover, all of the alleged misconduct occurred during the prosecutor's closing and rebuttal statements. *See Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) ("In order to constitute the denial of a fair trial, prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial." (internal quotation marks omitted)). And the judge followed closing arguments with the appropriate limiting instruction:

> The lawyers' statements and arguments are not evidence. They're only meant to help you understand the evidence and each side's legal theories. . . . You should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge.

*See Wilson v. McMacken*, 786 F.2d 216, 219 (6th Cir. 1986) (concluding that defendant could not establish prejudice under *Strickland* where trial judge provided jury with limiting instruction before and after prosecutor's closing argument containing contested statements); *see also United States v. Carter*, 236 F.3d 777, 787 (6th Cir. 2001) ("Ordinarily, a court should not overturn a criminal

conviction on the basis of a prosecutor's comments alone, especially where the district court has given the jury an instruction that may cure the error."); *Byrd*, 209 F.3d at 537 (concluding, in a habeas case, that limiting instruction was one reason alleged misconduct did not mislead jury). Given that "juries are presumed to understand and follow directions from the court," *Carter*, 236 F.3d at 787, we conclude that the prosecutor's statements did not "confuse or improperly influence" the jury, *see Byrd*, 209 F.3d at 538.

Because Smith cannot establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, he cannot show ineffective assistance of counsel as "cause" to excuse procedural default of his prosecutorial-misconduct claim, *see Hinkle*, 271 F.3d at 246. The district court erred in concluding otherwise.

## B. Ineffective Assistance of Counsel

Although in our cause-and-prejudice analysis we concluded that the defense's failure to object to the prosecutor's statements did not constitute ineffective assistance of counsel, Smith's petition suggests that two other deficiencies in his counsel's performance rendered his trial outcome unreliable. As discussed earlier, to prevail on this claim, Smith must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. And, as before, we start with a strong presumption that defense counsel furnished reasonable assistance. *Id.* at 689. As for our review, even though the Michigan Court of

Appeals reviewed Smith's ineffective-assistance-of-counsel claim on the merits, it is unclear whether

the court properly applied *Strickland*. But we need not decide whether AEDPA governs, because

Smith's claim fails even under de novo review. *See Baze v. Parker*, 371 F.3d 310, 320 (6th Cir.

2004).

First, relying on *Doyle v. Ohio*, 426 U.S. 610 (1976), Smith alleges that the prosecutor

improperly used his silence to impeach his testimony at trial without objection from defense counsel,

*see id.* at 618 ("[I]t would be fundamentally unfair and a deprivation of due process to allow the

arrested person's silence to be used to impeach an explanation subsequently offered at trial."). We

reject this argument, concluding that Smith mischaracterizes the prosecutor's conduct. At trial,

Smith testified that he had no opportunity to tell his side of the story. On cross-examination, the

prosecutor referenced that testimony and showed that an opportunity had existed with two questions

to Smith: whether Smith knew of Detective Miller's involvement in the case and whether Smith had

contacted Miller to explain what happened with Sargent. To assess whether these questions

constitute *Doyle* error, we ask whether the prosecutor referred to the defendant's post-arrest silence

so that the jury would draw "inferences of guilt from [the] defendant's decision to remain silent after

. . . arrest." *See Gravley v. Mills*, 87 F.3d 779, 788 (6th Cir. 1996). In this case, the prosecutor

referenced Smith's silence to cast doubt on Smith's earlier claim that he never received an

opportunity to explain himself, not to exploit Smith's silence as probative of guilt. *See id.*; *United

States v. Martinez-Larraga*, 517 F.3d 258, 268 (5th Cir. 2008) ("*Doyle* also expressly recognizes that

a prosecutor's reference to [post-arrest silence] may *properly* be made where it is *not* used to

impeach the defendant's exculpatory story, or as substantive evidence of guilt, but rather to respond to some contention of the defendant concerning his post-arrest behavior." (internal quotation marks omitted)). Because Smith fails to establish that the prosecution committed *Doyle* error, he cannot show "a reasonable probability" that but for his counsel's lack of objection, "the result of the proceeding would have been different."

Second, Smith argues that defense counsel should have objected to the admission of several witnesses' testimony describing Sargent's out-of-court statements about Smith. Relying on *Tome v. United States*, 513 U.S. 150 (1995), the district court agreed, concluding that "it is error to admit corroborating hearsay in order to buttress the credibility of a complainant." Both Sargent and Marinelli testified that after Smith dropped them off at Denny's, Sargent told Marinelli that Smith's search included digital penetration. Sargent's mother testified that upon arriving home, Sargent said that Smith searched her beneath her clothes. Defense counsel objected to Marinelli's statement, but withdrew his objection once the trial court decided to admit the statement as an excited utterance, and accordingly did not object to either of the other statements.

The Michigan Court of Appeals concluded that it was within the trial court's discretion to admit all three statements, and that, even if Sargent's statement to her mother were not an excited utterance, it was cumulative of Sargent's own testimony and any error was harmless. Smith disputes the state's court's determination, but on habeas review, we do not "decide whether a state trial judge's decision whether to admit evidence pursuant to state evidentiary rules was a proper one. Our

sole task is to decide whether federal constitutional violations have occurred." *Byrd*, 209 F.3d at 528. Smith cannot establish that his counsel's failure to object prejudiced his defense; therefore, his ineffective-assistance-of-counsel claim must fail.

## IV. Conclusion

Because we conclude that Smith cannot show cause and prejudice to excuse procedural default of his prosecutorial-misconduct claim, and because Smith's ineffective assistance-of-counsel claim is without merit, we REVERSE the judgment of the district court granting the writ of habeas corpus, and REMAND for consideration of Smith's remaining claims.

**Cole, Circuit Judge, concurring.**  The Constitution entitles a criminal defendant to a fair trial, not a perfect one, *Delaware. v. Van Arsdall*, 475 U.S. 673, 681 (1986), and although this is a close case, I agree with the result reached by the majority because the prosecutorial misconduct at issue did not so infect the trial with unfairness as to make the conviction a denial of due process, *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  I write separately to highlight the fact that the prosecutor in this case made several comments that constituted misconduct, one of which was particularly serious.

## I.  LEGAL STANDARDS

### A.    Standard of review

When considering prosecutorial-misconduct claims on habeas review, "the relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the conviction a denial of due process." *Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006) (quotation omitted).  If the state courts have ruled on a petitioner's non-defaulted prosecutorial-misconduct claims, those rulings are entitled to heightened AEDPA deference. *Id*.  Here, the Michigan state courts reviewed Smith's prosecutorial-misconduct claim only for plain error, so there is no merits decision to which we could defer under AEDPA. *See White v. Mitchell*, 431 F.3d 517, 527 (6th Cir. 2005).  However, Smith's claim has been procedurally defaulted, so we cannot review it unless he demonstrates "cause for the procedural default and actual prejudice as a result of the alleged

violation of federal law, or demonstrat[es] that failure to consider the claims will result in a fundamental miscarriage of justice." *Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007) (internal quotation marks and editorial marks omitted). Unlike the majority, I begin my analysis with the prejudice inquiry, rather than the cause inquiry. The prejudice inquiry essentially overlaps with the question of whether the prosecutor's comments so infected the trial with unfairness as to make the conviction a denial of due process. *Cf. Banks v. Dretke*, 540 U.S. 668, 691 (2004) (noting that "prejudice" prong of procedural default analysis parallels prejudice prong of a *Brady* prosecutorial-misconduct claim). Because I find that the prosecutor's comments did not so infect the trial, Smith has not demonstrated prejudice sufficient to overcome the procedural default, and I do not reach the cause inquiry.

**B.      Prosecutorial misconduct analysis**

"When addressing claims of prosecutorial misconduct, we first determine whether the challenged statements were indeed improper." *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). "Upon a finding of such impropriety, we then 'look to see if they were flagrant and warrant reversal'" because only a retrial could correct the error. *Id*. (quoting *United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999)). We use a four-factor test to analyze the flagrancy of alleged instances of prosecutorial misconduct: 1) whether the prosecutor's statements tended to mislead the

jury or prejudice the accused; 2) whether the misconduct was isolated or extensive; 3) whether the misconduct was deliberate;[1] and 4) the total strength of the evidence against the accused. *Id*.

In cases heard on direct appeal, rather than through habeas review, we have held that "[t]here are instances where a single misstep on the part of the prosecutor may be so destructive of the right to a fair trial that reversal is mandated." *See United States v. Carroll*, 26 F.3d 1380, 1387 (6th Cir. 1994) (reversing conviction where prosecutor inappropriately and misleadingly vouched for credibility of government witnesses where proof of guilt was not overwhelming) (citing *United States v. Solivan*, 937 F.2d 1146, 1150 (6th Cir. 1991)). In *Solivan*, we reversed a defendant's conviction where the prosecutor, in his closing argument, urged the jury to find the defendant guilty, saying "I'm asking you to tell [defendant] and all of the other drug dealers like her . . . that we don't want that stuff in Northern Kentucky . . . ." *Id*. at 1148. We held that this single statement was "so inflammatory in the context of the ongoing drug war" that it deprived the defendant of a fair trial. *Id*. at 1155. To the extent that the majority, quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), suggests that habeas relief based on prosecutorial misconduct is not available unless the misconduct occurred throughout the entire trial, rather than merely during counsel's arguments, I disagree. The full quote from *Pritchett* states, "prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial, *or* so gross as probably prejudice the

---

[1]We have also said, however, that the prosecutor's intent is irrelevant: "the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Hutchinson v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002).

defendant." *Id*. (internal citations and quotation marks omitted) (emphasis added). If a single instance of prosecutorial misconduct is so prejudicial that it infects the defendant's whole trial with unfairness and deprives him of due process, the defendant is surely entitled to habeas relief.

## II. APPLICATION

While I agree with the majority's conclusion that many of the challenged prosecutorial comments were proper and that the district court overstated the extent of the prosecutorial error at issue, the majority does not adequately acknowledge the several clearly improper comments the prosecutor made in this case. Below, I discuss these comments in order of their potential for prejudice, beginning with what I deem to be the most serious error. I then analyze whether, taken together, these comments deprived Smith of a fair trial.

### A. The instances of misconduct

By far the most troubling instance of misconduct came at the close of the prosecutor's rebuttal argument, when she stated to the jury:

> You all took an oath to return a fair and just verdict. Coming back with a not guilty, you'd have to look at Shannon Sargent and say, "I don't believe you." And Kristin Oliver, "I don't believe you." And Corrinne, "I don't believe you." You have to tell the Oakland County Sheriff's Department, "You know what? *I'd be okay with my daughter being stopped by him at three in the morning.*"
>
> I ask that you return the right verdict, and that's guilty as charged on all three counts.
>
> Thank you.

(JA 432 (emphasis added).) The prosecutor clearly intended this statement to appeal to the passions and prejudices of the jurors. By placing in the jurors' minds the thought of their own daughters being stopped by a police officer accused of committing a sexual crime, the prosecutor made it less likely that the jurors would decide the case on the basis of the evidence before them and more likely that they would convict Smith because of their subjective fears about sexual predation. *See Gall v. Parker*, 231 F.3d 265, 315 (6th Cir. 2000) (granting relief based on "egregious" misconduct where prosecutor urged jurors not to "turn [the defendant] loose on society"); *Bates v. Bell*, 402 F.3d 635, 642 (6th Cir. 2005) (granting habeas relief where prosecutor warned jurors that a decision not to execute defendant was equivalent to "passively issu[ing] a warrant of execution for someone else"). The majority opinion falls short in that it fails to recognize the potentially serious harm presented by the prosecutor's comment. I see little difference between the "I'd be okay with my daughter being stopped by him" comment and those comments that contributed to grants of relief in *Gall v. Parker* and *Bates v. Bell*.

Second, the prosecutor's comment to the jury that "[t]his is not going after a person who's not guilty . . . [;] [t]hat would be every prosecutor's worst nightmare," (JA 419), was improper because it expressed the prosecutor's own belief that Smith was guilty. *See Carroll*, 26 F.3d at 1384-85 ("[S]tatements of personal belief on the part of a prosecutor may have a 'devastating impact' on a jury." (quoting *United States v. Bess*, 593 F.2d 749, 755 (6th Cir. 1979))). Statements by the prosecutor carry "the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Young*, 470 U.S.

1, 18-19 (1985). The jury could also infer from such statements that the prosecutor knows of additional evidence of the defendant's guilt that was not presented at trial. *See id.*; *Gall v. Parker*, 231 F.3d at 312. The prosecutor's task is to put on evidence and argue inferences from that evidence; her "personal opinion has no place at trial." *Carroll*, 26 F.3d at 1384 (internal quotation marks omitted).

The majority excuses this comment because it was arguably a response to a statement by the defense counsel that he wished the jury had the option of affirmatively proclaiming Smith "innocent," rather than merely "not guilty." However, even if the prosecutor's "worst nightmare" comment is viewed as a response to the defense's argument, this does not render the comment permissible.[2] Prosecutorial vouching is forbidden, even in response to a credibility challenge by the defense. *See United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996) (prosecutor's statement of personal belief was improper even though it came in response to defense argument; however, the fact that the statement was a response did minimize its prejudicial effect).

---

[2]At times, questionable prosecutorial comments may be proper because they are "made in response to the argument and strategy of defense counsel." *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). For example, I agree with the majority that after Smith's counsel argued that Sargent's alleged repression of the memory of penetration was "going to be one for the psychology books" (JA 400-01) because it was not the type of situation in which people typically suppress memories, it was not misconduct for the prosecutor to respond: "How about it's common in sexual assault victims to repress the most significant thing that happened . . . ?" (JA 425). Although Smith claims that the prosecutor committed misconduct by arguing facts not in the record, the prosecutor was reasonably reacting to an argument strategy initiated by the defense.

Third, the prosecutor improperly stated that if Sargent had testified that Smith penetrated her during the search, "we would believe her." (JA 426.) Again, the majority states that this was only a response to defense counsel's argument that Sargent's memory loss made her not credible, but it bears repeating that a prosecutor is not permitted to vouch personally for a witness's veracity, even in response to a credibility challenge by the defense. The prejudicial effect of this particular comment, however, is small. It is phrased as a hypothetical, stating only that the prosecutor "would" believe Sargent "if" she changed her story. At most, this comment might have led the jury to infer that the prosecutor generally found Sargent to be a credible person. On the other hand, the jury might also have found the comment to undercut the prosecution's own credibility, since the comment suggests that the prosecutor would indiscriminately believe Sargent's story, regardless of which version she asserted. This comment did not have significantly affect the trial overall.

Fourth, the prosecutor stated "[s]eriously, why is [defense counsel] making a 19-year-old girl cry [on the stand]?" (JA 421.) Prosecutors should not level personal attacks against defense counsel, and trial courts should not countenance such conduct. *See Carter*, 236 F.3d 777, 785 (6th Cir. 2001). However, the likelihood that this statement significantly impacted the trial is small, as the prosecutor merely accused the defense counsel of being insensitive, and, in any case, the jurors witnessed the defense counsel's conduct themselves and could form their own impressions of it. *Cf. id.* (prosecutor repeatedly accused defense counsel of lying to the jury).

**B.      The misconduct did not deprive Smith of a fair trial**

The next step in the analysis is to determine whether these instances of misconduct were flagrant. Under the first prong of the test, only two of the prosecutor's comments had real potential to "mislead the jury and prejudice the defendant." *Boyle*, 201 F.3d at 717. The less serious of the two was the prosecutor's remark suggesting that she personally believed the defendant was guilty. While plainly improper, this comment was not particularly egregious: it did not suggest to the jury that the prosecutor knew of additional evidence of guilt that was not available to them, and, as the majority points out, its prejudicial effect was lessened by the fact that it was a response to a comment by the defense counsel. On its own, this comment did not mislead the jury and likely did not seriously prejudice the defendant. However, it could certainly contribute to a finding that, cumulatively, the misconduct amounted to a due process violation. *See, e.g.*, *Bates*, 402 F.3d at 646 (prosecutor's vouching among factors contributing to grant of habeas based on misconduct).

The more misleading and prejudicial instance of misconduct was the "I'd be okay with my daughter being stopped by him" comment, which not only was a patent appeal to the juror's fears and prejudices, but had a particularly strong potential to influence the jury because it was the last piece of argument they heard before deliberating. The majority is correct that this error was lessened by the district court's subsequent jury instructions stating that the lawyers' arguments are not evidence, and that the jury should "should only accept things the lawyers say that are supported by the evidence or by your own common sense" and should "think about each witness and each piece of evidence and whether you believe them . . . [and] decide whether the testimony and evidence you believe proves beyond a reasonable doubt that the [defendant] is guilty." (JA 433, 435.) However,

curative instructions do not always eradicate the harm caused by a prosecutor's inappropriate statement. *See, e.g.*, *United States v. Payne*, 2 F.3d 706, 715 (6th Cir. 1993) (reversing conviction, on direct appeal, where curative instructions did not eradicate harmful effect of misconduct); *Solivan*, 937 F.2d at 1157 (same). The instructions in this case, while certainly helpful, did not address directly the harm posed by the "I'd be okay with my daughter being stopped by him" comment, which was not that the jury would *mistake* it for evidence, but that the jury would allow its fears and passions to influence its decision *instead of* limiting its consideration to the evidence in the record. Thus, with respect to the prosecutor's "I'd be okay with my daughter being stopped by him" comment, the first prong leans in favor of finding the misconduct to be flagrant.

Under the second prong, the misconduct was isolated and not extensive. There were several minor instances of misconduct, but only one major instance. The district court incorrectly found that this prong weighed in favor of flagrancy because the district court was mistaken about the number of instances of misconduct that had occurred. However, as suggested above, the fact that the misconduct was isolated to one or two remarks is merely one consideration and is not determinative. Under the third prong, the "I'd be okay with my daughter being stopped by him" comment was clearly deliberate. The prosecutor intended it to be the final idea planted in the minds of the jurors before they began deliberating.

Under the fourth prong, the total strength of the evidence against Smith was strong but not overwhelming. The evidence consisted primarily of Sargent's testimony, buttressed by the testimony

of two similar-acts witnesses, Oliver and Steinbrenner, who also claimed that Smith inappropriately sexually touched them during searches of them. If the jury believed these witnesses rather than Smith, the evidence against Smith was strong, but there was no physical evidence or third-party-witness account to corroborate Sargent's claims. Sargent's boyfriend, Peter Marinelli, testified that Smith took Sargent to his police car for about fifteen minutes and required Marinelli to wait in his own car. Marinelli did not have a clear view of police car because, as Smith admitted at trial, Smith intentionally adjusted Marinelli's car mirror to prevent him from being able to see Smith as he questioned Sargent.

Cases involving alleged sexual misconduct often turn on the relative credibilities of the defendant and the prosecuting witness with little other evidence for the jury to consider. *Martin v. Parker*, 11 F.3d 613, 616-17 (6th Cir. 1993). Like the district court, I am mindful of the fact that it is particularly important in such cases to ensure that juries base their decisions on the evidence before them, not on prejudices and fears raised by inappropriate prosecutorial conduct. *See Washington v. Hofbrauer*, 228 F.3d 689, 708 (6th Cir. 2000); *Martin*, 11 F.3d at 616-17. Accordingly, though I find that this prong is close to neutral, it cuts slightly in favor of Smith.

In sum, the misconduct in this case boils down to one highly inappropriate comment that was deliberately calculated to inflame the fears and passions of the jurors, as well as one other potentially prejudicial comment about the prosecutor's personal belief that the defendant was guilty. I find this to be a much closer case than the majority. The misconduct occurred in the type of case in which

it is particularly important that such passions *not* be the basis for the jury's decision. Furthermore, in a case on direct appeal involving a single instance of misconduct similar to the "I'd be okay with my daughter being stopped by him" comment, we held that a new trial was required, even though the trial judge attempted to cure the misconduct with an instruction to the jury. *See Solivan*, 937 F.2d at 1157. Finally, at least two prongs of the flagrancy analysis, and arguably three, point in favor of finding the prosecutor's misconduct to be flagrant.

Nonetheless, I agree with the result reached by the majority because I cannot say that the prosecutor's misconduct so infected Smith's trial with unfairness as to deprive him of due process. The presentation of evidence to the jury proceeded properly, and Smith was able to testify and cross-examine the prosecution's witnesses free of any misconduct. I am persuaded that the jury based its decision on the evidence before it, not on the prosecutor's inappropriate rhetoric in argument. The jury presumably followed the judge's instructions, which, while not perfect, did convey that the jury was required to base its decision on the evidence before it, not on the lawyers' remarks. While the prosecutor's error was a serious one, Smith received a fair trial and was not deprived due process.

## III. CONCLUSION

For the foregoing reasons, I concur in the result reached by the majority and thus would reverse the judgment of the district court granting the writ of habeas corpus and remand for consideration of Smith's remaining claims.