IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 24, 2010

## STATE OF TENNESSEE v. DEQUON LETRAY BOYD and JEMAROW DEVERIUS TILLISON

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 270420 & 270421    Barry A. Steelman, Judge**

_____

**No. E2009-02071-CCA-R3-CD-FILED-SEPTEMBER 12, 2011**

_____

Defendants Jemarow Deverius Tillison and Dequon Letray Boyd were originally indicted separately by the Hamilton County Grand Jury for offenses that occurred in the same shooting incident against the same victims. Upon motion of the State and by agreement between the parties, the indictments were consolidated, and a superceding indictment charged both defendants with attempted first degree premeditated murder of Darlisa Wynn; first degree premeditated murder of Casey Woods; felony murder of Casey Woods; especially aggravated robbery of Darlisa Wynn; aggravated assault of Darlisa Wynn; reckless endangerment; and especially aggravated burglary of the home of Kysha Henderson. Following a jury trial, Defendant Boyd was convicted of attempted first degree premeditated murder; first degree premeditated murder; felony murder; two counts of aggravated assault, one as charged and the other as a lesser-included offense of especially aggravated robbery; reckless endangerment; and aggravated criminal trespass as a lesser-included offense of especially aggravated burglary. Defendant Boyd's felony murder conviction was merged with his conviction for first degree murder, and both aggravated assault convictions were merged with his conviction for attempted first degree murder. He received an effective sentence of life imprisonment. Defendant Tillison was convicted of facilitation of attempted first degree premeditated murder; facilitation of first degree premeditated murder; facilitation of felony murder; aggravated assault of Darlisa Wynn; attempted aggravated assault, a lesser-included offense of aggravated assault; reckless endangerment; and aggravated criminal trespass, a lesser-included offense of especially aggravated burglary. He was sentenced to an effective sentence of 25 years imprisonment. On appeal, both Defendants challenge the sufficiency of the convicting evidence. Defendant Boyd also raises the following additional issues: 1) whether the trial court erred by not granting a mistrial following testimony that he was a gang member; and 2) whether the prosecutor's statement during closing argument that the jury had a duty to the community to convict constitutes misconduct. After a careful review of the record before us, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which ALAN E. GLENN, J., joined, and JOSEPH M. TIPTON, P.J., concurring in results only.

Mike A. Little, Chattanooga, Tennessee, for the appellant, Dequon Letray Boyd; and Daniel J. Ripper, Chattanooga, Tennessee, for the appellant, Jemarow Deverius Tillison.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William H. Cox, III, District Attorney General, Boyd Patterson, Assistant District Attorney General; and Steven E. Smith, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

*Facts*

Darlisa Wynn testified that on April 3, 2006, her neighbor Kysha Henderson called to ask her to spend the night at her apartment so that Wynn could babysit her children after Henderson left for work early the next morning. At around 3:00 a.m., Wynn, her grandchildren, and her fiancé Casey Woods were at Jones' apartment when she heard a tap on the door. She then heard a loud noise and the door was kicked in. Several men came into the apartment and said, "Break yourself, bitch," and they began shooting. Wynn testified that Woods pulled her three-year-old grandson down, and her 12-year-old granddaughter was sitting beside her. Wynn heard Woods say, "I'm shot." Then he fell onto her, and she saw two bullets protruding from his head. Woods was still alive and told Wynn that he was hurting. Wynn recognized one of the shooters as Defendant Boyd, whom she had known since he was a child. Wynn testified that she saw two shooters. On cross-examination, Wynn acknowledged that she did not identify Defendant Boyd as one of the shooters to the police until the following day. She testified that she was concerned for Woods and her grandchildren and was hysterical at the time of the incident.

Kysha Henderson, the resident of the apartment where the shooting occurred, testified that Wynn was at her house that night because Henderson had to work the next morning, and Wynn was going to babysit her children. The people in the apartment that night were Darlisa Wynn, Casey Woods, Darlisa's grandson Marcus and her granddaughter Regina, Henderson's sister Sandra and her three children. Henderson testified that she had been asleep for about 15 minutes when she heard gunshots. She lay in bed "in shock." Her sister Sandra and Wynn's granddaughter Regina came into her bedroom and told her to call the

police because Wynn and Casey had been shot. One of them called the police. Henderson grabbed the children, left the apartment and ran across the street.

Sandra Jones, age 17 at the time of trial, testified that she was playing a game in the living room of her sister's apartment with Wynn, Casey and Wynn's grandchildren when she heard a kick at the door. The door was then kicked in, and four men with guns and dressed in black came into the apartment. They were hollering, and they started shooting. Jones laid on the floor. She did not see the men's faces.

Officer Adam Emery of the Chattanooga Police Department was finishing a call on a nearby street when he heard a loud succession of gunshots. He and three other officers responded to the area where they heard the gunshots. He was driving his patrol car, following Officer Lawson, chasing a suspect vehicle. Officer Emery saw three men run from that vehicle. He apprehended Defendant Boyd and returned to the suspect's vehicle to secure that scene. He observed a handgun lying on the ground near the driver's side door of the vehicle. He found another handgun on the floorboard of the vehicle. While Officer Emery was at the scene, he saw a person run across the roof of a nearby detached garage and leap over a fence. He reported what he saw to other officers in the area, who later apprehended Defendant Tillison. Officer Emery later found another handgun lying on the ground between the garage and the fence.

Officer Christopher Lawson also testified that he had just finished a call and heard gunshots in the area. He drove his patrol car toward that area, and he saw two vehicles speeding away. He saw the first vehicle turn, and he followed the second vehicle, which was closest to him. He noticed as he pursued the second vehicle that the first vehicle had stopped and the suspects were fleeing from it. The second vehicle, which Officer Lawson followed, then crashed into a parked car, and Officer Lawson saw two people exit and flee from the suspect vehicle. He chased the suspects on foot. He testified that a man later identified as Defendant Tillison, whom he had seen exit the front passenger side of the vehicle, was apprehended by other officers.

Officer Randy Raulston was another one of the officers in the area when the incident happened. He testified that he heard gunshots and saw a flash of light. He got into his patrol car and saw a black male running towards him. Officer Raulston blocked the suspect's path with his patrol car, and the suspect slid across his car. Officer Raulston and Officer Emery apprehended that suspect, who was later identified as Defendant Boyd. Officer Emery detained Defendant Boyd while Officer Raulston continued pursuit of other suspects in the area. He was circling the area in his patrol car when he saw a black male dressed in black run in front of him. He followed the man on foot and called to other officers. He saw the man run between two houses, and he lost sight of him. Officer Tasha Lass yelled that she

-3-

had found him, and Officer Raulston assisted her in apprehending him. That suspect was later identified as Defendant Tillison.

Officer Robert Shainline, a crime scene investigator, responded to the scene where the suspects' vehicle, a maroon Dodge Intrepid, had crashed. He found a .38 caliber revolver with a scratched off serial number on the ground beside the vehicle. There were five shell casings inside that had all been fired. He found a .380 caliber handgun with the hammer cocked in the back floorboard of the vehicle behind the driver's seat. He also found a .22 caliber handgun beside a garage. That weapon had malfunctioned and a bullet was lodged inside. At the scene of the shooting, Detective Shainline found a 9 millimeter live round beside the door to the apartment, and he saw a muddy shoe print on the door. He found shell casings inside the apartment, and he observed bullet hole damage inside the apartment. He also processed two vehicles, a maroon Dodge Intrepid and a blue Dodge Intrepid. The ignitions of both vehicles had been popped out and were lying on the floorboards, and one of the tires of the maroon Intrepid was shredded. He found a cell phone and a black t-shirt on the floorboard of the maroon Intrepid. Officer James Tate examined the cell phone found in the suspect vehicle and determined that it belonged to Defendant Tillison.

Detective Shainline also testified that a projectile fell from the victim Mr. Woods' jacket, and he found marijuana in his pocket. Detective Shainline learned that Mr. Woods had died, and he collected his fingerprints and retrieved projectiles that were removed from the victim's brain and his left arm.

Dr. Frank King performed an autopsy on the victim Casey Woods. Mr. Woods died from multiple gunshot wounds. He survived in the hospital for about two days after the shooting.

Robert Royse of the TBI crime lab did ballistics testing on the three weapons recovered by Officer Shainline and the bullets and shell casings recovered from the scene of the shooting. Mr. Royse determined that a .380 cartridge case that he tested had been fired from the .380 semi automatic pistol found in the back floorboard of the maroon Intrepid. He also examined a .380 bullet with jacket, which he determined had the same class characteristics and similar individual characteristics as test bullets fired from the weapon, but Mr. Royse did not find sufficient individual characteristics to conclusively determine that they were fired from the weapon. Mr. Royce also compared the .38 special revolver found on the ground beside the maroon Interpid with five .38 bullets and bullet fragments and determined that they all had the same class characteristics. However, the condition of the bullets precluded a conclusive identification as having been fired from that weapon. Mr. Royce testified, however, that those particular bullets were uncommon in that they had not been manufactured since 1968. The .22 caliber handgun found beside the garage had four

live cartridges in it, but there were no fired bullets or bullet fragments recovered to compare to it. Mr. Royce examined a lead fragment recovered from the victim Darlisa Wynn's leg, but the fragment had no identifiable markings.

Laura Hodge of the TBI crime lab analyzed gunshot residue kits taken from Defendants Boyd and Tillison's hands and clothing. As to Boyd, she concluded that there were elements present that were indicative that he could have fired, handled or been near a gun when it was fired. As to Tillison, she concluded that the results were inconclusive. She found some levels of the elements indicative of gunfire, but those levels did not meet the threshold requirement for a positive result.

Neither of the defendants in this case testified at trial or presented any evidence.

*Analysis*

*Mistrial*

The first issue we address in this appeal is raised by Defendant Boyd, who asserts that the victim Darlisa Wynn's statement during her testimony that Defendant was a gang member was so prejudicial as to require a mistrial. We disagree. While the statement was inappropriate, we conclude that it did not warrant a mistrial.

The determination of whether to grant a mistrial rests within the sound discretion of the trial court. *State v. Smith*, 871 S.W.2d 667, 672 (Tenn. 1994). The reviewing court should not overturn that decision absent an abuse of discretion. *State v. Brown*, 53 S.W.3d 264, 284 (Tenn. Crim. App. 2000). The burden of establishing the necessity for mistrial lies with the party seeking it. *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). No abstract formula should be mechanically applied in making this determination, and all circumstances should be taken into account. *State v. Mounce*, 859 S.W.2d 319, 322 (Tenn. 1993).

On cross-examination, defense counsel questioned Wynn repeatedly about her omission to tell police officers at the scene that Defendant Boyd was one of the shooters. On direct examination, Wynn testified that she had known Defendant Boyd since he was a child; however, Wynn did not identify him to law enforcement until the following day. On redirect, the State questioned Wynn:

> Q.    Is there some reason you haven't told the jury yet why you were
>         hesitant to tell the police it was [Defendant] shooting at you?

A.    The reason why is for the fact that I was scared for my life and for my granddaughter's life, who was young, a teenage, 12 at the time, my family, because it had been threats made to my family, you know, as far as because [Defendant] is in a gang.

Defendant Boyd's attorney objected, arguing that Wynn did not have personal knowledge that Defendant was in a gang and because there had been no foundation for the testimony.

In determining whether a mistrial is warranted because of inappropriate testimony of a witness, our supreme court has used the following three nonexclusive factors: "(1) whether the State elicited the testimony, or whether it was unsolicited and unresponsive; (2) whether the trial court offered and gave a curative jury instruction; and (3) the relative strength or weakness of the State's proof." *State v. Nash*, 294 S.W.3d 541, 547 (Tenn. 2009) (citing *State v. Smith*, 893 S.W.2d 908, 923 (Tenn. 1994)).

Applying these factors, we first note that the State did not elicit the testimony from the witness. During a bench conference, the trial court asked the prosecutor if he had met with the witness during the lunch break. The prosecutor denied that he had met with the witness during the lunch break and assured the court that he did not expect Wynn to testify about any gang involvement because he had never discussed it with her. He only expected her to testify that she was afraid of Defendant.

The trial court gave this curative instruction to the jury:

You are to disregard anything you heard the witness answer to except for the answer that she gave about being afraid. Anything else that you may have heard her say, not only are you to disregard that, but you are to also remember that any alleged prior act by the defendant or association alleged against the defendant is not to be considered with regard to whether or not either one of the defendants had a propensity for violence.

We believe that the unsolicited nature of the testimony combined with the trial court's curative instruction and the relative strength of the State's proof against Defendant Boyd is sufficient to conclude that there was no manifest necessity that a mistrial be declared. Defendant is not entitled to relief on this issue.

*Sufficiency of the Evidence*

Next, both defendants challenge the sufficiency of the convicting evidence. Defendant Boyd also asserts that the trial court erred by not granting his motion for judgment of acquittal as to three counts of the indictment. The standard of review for motions for judgments of acquittal is essentially the same as when analyzing the sufficiency of the convicting evidence. *State v. David Lee Wakefield*, No. M2004-02290-CCA-R3-CD, 2005 WL 1475315 (Tenn. Crim. App., filed June 22, 2005), *no perm. app. filed* (citing *State v. Adams*, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995). Thus, we will combine these issues into the same analysis.

When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Brewer*, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence, *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978), nor may this Court substitute its own inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); *Grace*, 493 S.W.2d at 476.

**Defendant Boyd**

At the close of the State's proof, Defendant Boyd made a motion for judgment of acquittal as to Counts 3, 4, and 7, charging him with felony murder in the perpetration of a burglary, especially aggravated robbery, and especially aggravated burglary. Defense counsel argued that the State presented no evidence of a robbery and that all of those three charges required proof of a robbery. The especially aggravated burglary count of the

indictment, Count 7, alleges that Defendant entered the apartment with the intent to commit robbery; and the felony murder charge, Count 3 of the indictment, alleges that Defendant killed the victim Casey Woods during the perpetration of a burglary. The State countered that those charges required proof only of Defendant's intent to commit a robbery and that the victim Wynn's testimony that Defendant shouted, "Break yourself, bitch" was proof of such intent.

Our review of the record shows that Wynn testified that "they," being the men who entered the apartment, said "Break yourself, bitch." She did not specifically testify that Defendant Boyd made that statement. Nevertheless, while we agree with Defendant Boyd that the evidence of a robbery is scant at best, we find it unnecessary to decide this issue because our review of the record shows that, as to Counts 4 and 7, the jury found Defendant Boyd guilty of the lesser included offenses of aggravated assault and aggravated criminal trespass. Moreover, the trial court merged Defendant Boyd's conviction for aggravated assault in Count 4 with his conviction for attempted premeditated murder of the same victim, Darlisa Wynn, and Defendant Boyd's conviction for felony murder was merged with his conviction for premeditated murder of the victim Casey Woods. Therefore, as long as there is sufficient evidence to affirm Defendant's convictions which remained after the jury's verdict and the trial court's merger of convictions, the trial court's refusal to grant Defendant Boyd's motion for judgment of acquittal prior to the jury's verdict is a moot issue.

As to his other challenge to the sufficiency of the evidence, Defendant Boyd argues that the proof of his identity as a perpetrator was insufficient to support his convictions. The identity of the accused as the person who committed the offense for which he is on trial is a question of fact for the jury. *State v. Williams*, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981). A victim's identification of a defendant as the perpetrator of an offense is, alone, sufficient to establish identity. *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993); *State v. Hill*, 987 S.W.2d 867, 870 (Tenn. Crim. App. 1998).

Darlisa Wynn testified that Defendant Boyd was one of the individuals who kicked in the door of the apartment and began shooting at the victims. Further, Defendant Boyd was apprehended by police as he was fleeing the scene immediately after the shooting and a gunshot residue test indicated that he had recently fired a gun. We conclude that the evidence was sufficient for the jury to find that Defendant Boyd was a perpetrator of the crimes. Defendant Boyd does not argue that the evidence of any other elements of the offenses for which he was convicted was insufficient.

**Defendant Tillison**

Defendant Tillison was convicted for facilitation of attempted first degree premeditated murder; facilitation of first degree premeditated murder; facilitation of felony murder, which was merged with his conviction for facilitation of first degree premeditated murder; aggravated assault, as a lesser included offense of especially aggravated robbery, and attempted aggravated assault, which convictions were both merged with his conviction for facilitation of attempted first degree premeditated murder; reckless endangerment; and aggravated criminal trespass, as a lesser included offense of especially aggravated burglary. Defendant Tillison challenges only two elements that he asserts were not proven: identity and premeditation.

Defendant asserts that there is insufficient evidence of his identity as a perpetrator, arguing that there were no witnesses who identified him as having been in the apartment. Defendant Tillison also argues that the evidence does not link him to one of the suspects' vehicles because none of the police officers who chased and apprehended him identified him as having exited either vehicle, and all of the officers who testified lost visual contact with him during the chase. Defendant Tillison also points out the lack of physical evidence, including DNA and fingerprints at the scene and on the weapons found. Defendant further asserts that the State failed to establish premeditation beyond a reasonable doubt.

Although the evidence of the defendant's guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. *State v. Tharpe*, 726 S.W.2d 896, 899-900 (Tenn. 1987); *State v. Gregory*, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993). The requirement that guilt be found beyond a reasonable doubt is applicable in a case where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S .W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S .W.2d 329, 331 (Tenn. 1977) and *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The Tennessee Supreme Court has adopted the United States Supreme Court standard that direct and circumstantial evidence should be treated the same when reviewing the sufficiency of the evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996).

Premeditation necessitates "a previously formed design or intent to kill," *State v. West*, 844 S.W.2d 144, 147 (Tenn. 1992) (citations omitted), and "an act done after the exercise of reflection and judgment . . . [meaning] that the intent to kill must have been formed prior to the act itself." Tenn. Code Ann. § 39-13-202(d). Our supreme court delineated several circumstances that may be indicative of premeditation, including the use

of a deadly weapon upon an unarmed victim, the fact that the killing was particularly cruel, declarations of the intent to kill the victim by the defendant, the making of preparations before the killing for the purpose of concealing the crime, and calmness immediately after the killing. *See State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997). The element of premeditation is a question of fact to be determined by the jury. *State v. Davidson*, 121 S.W.3d 600, 614 (Tenn. 2003). Although the jury may not engage in speculation, it may infer premeditation from the manner and circumstances of the killing. *Bland*, 958 S.W.2d at 660; *State v. Bordis*, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995).

The evidence taken in the light most favorable to the State shows that four men kicked in the door of Kysha Henderson's apartment and entered the apartment, firing upon the individuals inside, killing Casey Woods and injuring Darlisa Wynn. Several police officers in the vicinity of the shooting heard gunshots and proceeded to the area of the gunshots. In route to the scene of the crime, they saw two cars fleeing at a high rate of speed. When the officers chased the suspect vehicles, one of the vehicles crashed and three suspects ran. Defendants Tillison and Boyd were both apprehended in the area of the crime scene. Defendant Tillison's cell phone was found inside one of the suspect vehicles. We conclude that the circumstantial evidence of Defendant Tillison as one of the perpetrators is sufficient to sustain his convictions. The fact that the defendants entered the apartment forcibly, armed with guns and immediately opened fire upon the unarmed individuals inside, is sufficient evidence of premeditation. Additionally, evidence that both vehicles were stolen is also circumstantial evidence of premeditation in that it suggests that the perpetrators planned to hide their identities.

Defendant Tillison also contends that his conviction for felony murder in the perpetration of a burglary cannot be sustained because the State failed to prove that a robbery or a burglary occurred, such as was revealed by the jury's verdict in Counts 4 and 7, charging Defendant with especially aggravated robbery and especially aggravated burglary. The jury found Defendant Tillison guilty of the lesser included offenses of aggravated assault and aggravated criminal trespass. We apply the same reasoning as we did to Defendant Boyd's assertion that his felony murder conviction cannot stand. Defendant Tillison's conviction for facilitation of felony murder was merged with his conviction in Count 2 for facilitation of first degree premeditated murder, and we have concluded that the evidence was sufficient to sustain his conviction in that count. Therefore, we need not address the sufficiency of the evidence of the underlying felony. Defendant is not entitled to relief on this issue.

*Improper Comments in Closing Arguments*

Next, Defendant Boyd asserts that some of the prosecutor's statements during closing argument were improper and amounted to prosecutorial misconduct. During closing

arguments, the prosecutor told the jury, "You guys are here for a reason. You, the 12 of you that are going to be going back there, all of your diverse experiences, and you have a chance to do something for this community." Defense counsel objected, and the trial court instructed the jury to disregard the prosecutor's comment:

> Members of the jury, let me give you an instruction to disregard what was just said to you. Your verdict is not to be influenced by any concern about what the community might think about your verdict. Your concern – your verdict is not to be influenced by how your verdict might impact the community.
>
> Your verdict is to be rendered only on the evidence that you hear in the courtroom and the facts and the circumstances therein, as well as the law that the Court will give you, so – and also, you are to render your verdict without passion, sympathy, or prejudice. You're to be as objective as that requires you to be, and you're not to be influenced by what the community might expect of you or what impact your verdict might have on the community.
> All right. So disregard that last statement and remember my instructions to you in that regard.

When a defendant makes allegations of prosecutorial misconduct, on appeal, this Court reviews the record to see "whether such conduct could have affected the verdict to the prejudice of the defendant." *State v. Smith*, 803 S.W.2d 709, 710 (Tenn. Crim. App. 1990). In other words, it will be reversible error if the improper comments of the prosecutor were so improper or the argument so inflammatory that it affected the verdict. *See State v. Reid*, 164 S.W.3d 286, 344 (Tenn. 2005); *Harrington v. State*, 215 Tenn. 338, 385 S.W.2d 758, 759 (Tenn. 1965). This Court must consider the following five factors on appeal:

> (1) the conduct complained of viewed in context and in light of the facts and circumstances of the case; (2) the curative measures undertaken by the Court and the prosecution; (3) the intent of the prosecutor in making the improper statement; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case.

*State v. Buck*, 670 S.W.2d 600, 609 (Tenn. 1984) (quoting *Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)); *see also State v. Goltz*, 111 S.W.3d 1, 5-6 (Tenn. Crim. App. 2003). "'[P]rosecutors should exercise extreme caution when making any statement referring

to the community interests of the jurors.'" *See State v. Pulliam*, 950 S.W.2d 360, 368 (Tenn. Crim. App. 1996) (quoting *United States v. Solivan*, 937 F.2d 1146, 1154 (6th Cir. 1991)).

We agree with Defendant that the prosecutor's comments during closing argument were improper, but in order to constitute reversible error, Defendant must show that the comments were so inflammatory that they altered the outcome of his trial. Defendant cites *Ledford v. State*, 568 S.W.2d 113 (Tenn. Crim. App. 1978) and argues that the comments of the prosecutor suggest to the jury that it "ignore reasonable doubt," and that it "is proper to find both defendants guilty even if some of the jury has reasonable doubt." We disagree. We do not interpret the prosecutor's closing argument to suggest to the jury that it disregard the law as instructed by the trial court and use a different legal standard than that of reasonable doubt. We are satisfied given the weight of the evidence against Defendant Boyd, as well as the curative instruction given to the jury by the trial court immediately following the prosecutor's comments, the jury's verdict was not affected by the prosecutor's comments. Defendant Boyd is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record on appeal, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, JUDGE